Evans and Tinsley acted as joint venturers was not overwhelming. By basing its determination of prejudice on a contrary conclusion, the SJC ignored the clear standards set forth in *Strickland*.

Because the SJC's determination that Evans was not prejudiced by trial counsel's errors was contrary to *Strickland*'s clearly established standards, this Court should grant Evans' petition for habeas corpus.

**B.   The SJC's Analysis of the Harm Caused to Evans by the Erroneous Admission of Marvette Neal's Grand Jury Testimony.**

The erroneous introduction of Marvette Neal's grand jury testimony violated Evans' rights under the Confrontation Clause of the Sixth Amendment. The SJC was therefore required to apply the harmless error standards set forth in *Chapman*. The court failed to do this. By looking at the evidence in the light most favorable to the prosecution and failing to consider the totality of the evidence presented at trial when determining whether the erroneous admission of the grand jury testimony was harmless beyond a reasonable doubt, the SJC acted in direct conflict with clearly established Supreme Court precedent.

The standard set forth in *Chapman v. California*, 386 U.S. 18 (1967), for determining whether constitutional errors are harmless is, like

-61-

*Strickland's* standard, radically different from the standard articulated in *Jackson v. Virginia*. The *Chapman* Court explained that there are "some constitutional errors which in the setting of a particular case are so insignificant that they may . . . be deemed harmless, not requiring automatic reversal of the conviction." *Id.* at 22. The standard for evaluating whether a constitutional error is harmless is demanding. It requires the government to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. In later cases applying *Chapman*, the Supreme Court "has consistently made clear that it is the duty of a reviewing court to consider the trial record as a whole" when conducting its harmless error analysis. *United States v. Hasting*, 461 U.S. 499, 509 (1983). As the First Circuit has explained, when "appraising harmless error," courts should "not look only at the government's best case but rather at the evidence as a whole." *Rosetti v. Curran*, 80 F.3d 1, 6 (1st Cir. 1996). *See also United States. v. Triplett*, 195 F3d. 990, 998, n. 9 (4th Cir. 1999) (when conducting harmless error analysis, "it would be inappropriate to view the evidence in the light most favorable to the government").

*Chapman's* harmless error test, then, is much more demanding than *Jackson's* test for evaluating the legal sufficiency of the evidence. Rather

-62-

than looking at the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, courts determining harmless error under *Chapman* are required to consider the totality of the evidence and must determine whether the government has established beyond a reasonable doubt that the error did not contribute to the jury's verdict. These are radically different standards. As the Supreme Court made clear in *Satterwhite v. Texas*, the question under *Chapman* "is not whether the legally admitted evidence was sufficient to support the death sentence [or verdict] but, rather, whether the State has proved 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" 486 U.S. 249, 258-259 (1988), *quoting Chapman*, 386 U.S. at 24.

By effectively adopting the *Jackson* standard when determining whether the erroneous introduction of the grand jury testimony was harmless error, the SJC acted contrary to *Chapman*. Based on its claim that Evans had admitted that he had entered the restaurant where the shooting occurred, the court concluded that Neal's grand jury testimony placing Evans inside the restaurant had not prejudiced Evans because it was "merely cumulative of other testimony." *Evans*, 439 Mass. at 191. The court's claim about Evans'

-63-

supposed admission was erroneous. Evans did not testify that he entered the restaurant. Rather, he testified that he approached the entrance, saw that it was crowded, and then "immediately turned around" and stood in front of the restaurant.

Had the SJC considered the evidentiary record as a whole, it would have recognized the extent to which the facts surrounding the shooting were clearly in dispute at trial. In addition to Neal, the prosecution introduced testimony from two witnesses who claimed to have seen the shooting or the events leading up to the shooting. Marcello Holliday claimed he saw four men inside the restaurant acting in concert before the shooting, while Alton Clarke testified that he saw the actual shooting and that two men, whom he could not identify, had been involved. The jury's verdict – convicting Evans and his brother, while acquitting the two other defendants – shows how important Neal's grand jury testimony was. Even if the jury had accepted Clarke's version of the shooting, it would still have been left with an unanswered question: Who were the two gunmen? Neal's erroneously admitted grand jury testimony, which placed Evans and his brother inside the restaurant, offered an answer to this question. Indeed, the prosecutor, in his closing argument, explicitly argued that Neal "place[d] the two Evans

-64-

brothers" in the restaurant. (Tr. 10/137-138.) By characterizing the grand testimony as "merely cumulative of other testimony," *Evans*, 439 Mass. at 191, the SJC ignored the essential function it played in the prosecution's case. The court's cursory harmless error analysis looked only at the Commonwealth's best case and thus failed to consider the evidentiary record as a whole. This type of analysis is in clear and direct conflict with *Chapman* and its progeny.

The *Chapman* Court warned that "harmless-error rules can work very unfair and mischievous results when . . . highly important and persuasive evidence or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one." 386 U.S. at 22. By formulating as demanding a harmless error standard as it did, the *Chapman* Court endeavored to avoid such results. *See id.* at 23. The SJC's misapplication of *Chapman* resulted in the kind of unfairness the *Chapman* Court warned of. Because the SJC's decision was contrary to *Chapman*'s clearly established standards, Evans' petition for habeas corpus should be granted.

## Conclusion

For all of the above-stated reasons, a writ of habeas corpus should issue.

                                              Respectfully submitted,
                                              Jimmy Evans,
                                              By his attorneys:

*/s/ Michael R. Schneider*

Michael R. Schneider
MA BBO # 446475

*/s/ Ryan M. Schiff*

Ryan M. Schiff
MA BBO # 658852

SALSBERG & SCHNEIDER
95 Commercial Wharf
Boston, MA 02110
(617) 227-7788
*Counsel for Petitioner*

Dated: October 19, 2004