**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
JIMMY EVANS                         )
            Petitioner,             )
                                    )
v.                                  )        Civil Action No. 04-12205-WGY
                                    )
MICHAEL THOMPSON                    )
            Respondent.             )
_____)

**RESPONDENT'S MEMORANDUM IN OPPOSITION**
**TO PETITION FOR HABEAS CORPUS**

This memorandum of law is submitted in opposition to the petition for a writ of

habeas corpus filed by Jimmy Evans ("the petitioner").  As argued in this memorandum,

the petition must be denied where one of the petitioner's claims is unexhausted and in any

event, the petitioner cannot demonstrate that the state court's adjudication of his claims

on the merits resulted in a decision that was contrary to or involved an unreasonable

application of clearly established Federal law, as determined by the Supreme Court of the

United States, or an unreasonable determination of the facts in light of the evidence

presented in the state court.

**PRIOR PROCEEDINGS**

On February 21, 1995, a Suffolk County grand jury indicted the petitioner on a

charge of first-degree murder, two counts of illegally possessing ammunition, and two

counts of illegally possessing a firearm (S.A. 1, p. 4).[1]  From October 28 through November

_____

[1]  The respondent's supplemental answer will be referred to as (S.A.--), the
petitioner's appendix as (P.A.--) and the trial transcripts which will be filed separately by
the respondent, by volume and page number as (Tr. --/--).

8, 1996, the petitioner was tried before a jury, Banks, J., presiding (S.A. 1, p. 6-7).[2]  On November 8, 1996, the jury found the petitioner guilty of first-degree murder on the theories of deliberate premeditation and extreme atrocity and cruelty and guilty on the remaining indictments (S.A., p. 7).  Justice Banks sentenced the petitioner to the mandatory term of life imprisonment on the murder conviction, and to concurrent terms of four to five years for illegally possessing a firearm (S.A. 1, p. 8).  The remaining convictions were placed on file with the petitioner's consent (S.A. 1, p.8).  The petitioner filed a timely notice of appeal (S.A. 1, p.8).

On November 17, 1998, the petitioner filed a motion for new trial (S.A. 1, p. 9).  On July 1 and September 27, 1999, Justice Donovan conducted a non-evidentiary hearing on the motion (S.A. 1, p. 9).  On December 30, 1999, Justice Donovan denied the motion in a written memorandum and order (S.A. 1, p. 10; P.A. Ex. B).  The petitioner filed a timely notice of appeal from the denial of his motion for new trial (S.A. 1, p. 11).

The petitioner's direct appeal to the Supreme Judicial Court, pursuant to G.L. c. 278, § 33E, was consolidated with his appeal from the denial of his motion for new trial.  He claimed the following errors on appeal: 1) trial counsel's failure to conduct an independent forensic investigation constituted ineffective assistance of counsel; 2) the motion judge abused her discretion in refusing to conduct an evidentiary hearing on the motion for new trial; 3) the trial judge abused his discretion and violated defendant's right to present a defense when he prevented the defendant from questioning Eddie Hawkins about statements a co-defendant had made to him; 4) the trial judge violated the defendant's

---

[2]  The petitioner was tried jointly with his brother, John, and two other co-defendants.

right to confrontation when he precluded the defense from cross-examining a Commonwealth witness about the specific charges he was facing; 5) the trial judge violated the defendant's right to confrontation and due process when he allowed the Commonwealth to call Marvette Neal in order to present his prior inconsistent statements to the grand jury; 6) the prosecutor's closing argument improperly vouched for the credibility of a witness and contained highly inflammatory and emotional appeals to the jury; 7) other errors require reversal or reduction in the verdict; and 8) the Court should exercise its powers under G.L. c. 278, § 33E to order a new trial, reduce the verdict or remand for an evidentiary hearing (S.A. 2).   The Supreme Judicial Court affirmed the petitioner's convictions and the denial of his motion for new trial on April 16, 2003 (S.A. 5). 439 Mass. 184, 786 N.E.2d 375 (2003).  A petition for rehearing was denied on June 5, 2003 (S.A. 7).  The petitioner then filed a petition for writ of certiorari, which the United States Supreme Court denied on October 20, 2003.

On October 19, 2004, the petitioner filed a petition for writ of habeas corpus in this court.  On March 22, 2004, the respondent filed an Answer and Supplemental Answer.  On May 21, 2004, the petitioner filed a further supplemental answer.  On September 13, 2004, the petitioner filed a memorandum of law in support of his petition for writ of habeas corpus.

## STATEMENT OF FACTS

The Massachusetts Supreme Judicial Court's recitation of the facts of the petitioner's crimes is entitled to the presumption of correctness under 28 U.S.C.

§2254(e)(1).  *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1sr Cir. 2000).  The AEDPA presumption of correctness applies to all "basic, primary, or historical facts" underlying the state court's conclusion.  *Gunter v. Maloney*, 291 F.3d at 76; *Sanna v. DiPaolo*, 265 F.3d at 7.  In addition, the presumption of correctness extends to factual determinations made by both state trial and appellate courts.  *Rashad v. Walsh*, 300 F.3d 27, 34 (1st Cir. 2002), and to any factual findings implicit in the state court's ruling.  *LaVallee v. Delle Rose*, 410 U.S. 690, 692 (1972); *Weeks v. Snyder*, 219 F.3d 245, 258 (3d Cir.), *cert. denied*, 531 U.S. 1003 (2000).   As the First Circuit has noted, "[a] habeas petitioner must clear a high hurdle before a federal court will set aside any of the state's factual findings."  *Mastracchio v. Vose*, 274 F.3 590, 598 (1st Cir. 2001).   The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1).

The Supreme Judicial Court found the following facts concerning the petitioner's crimes:

> At about midnight on January 24, 1995, the victim, Lyle Jackson, went to Cortee's, a nightclub in the Dorchester neighborhood of Boston, where he met a friend, Marcello Holliday.  The defendants [petitioner and his brother, John] were at the same nightclub with two friends, Robert Brown and Ronald Tinsley.   At approximately 1:45 A.M. on January 25, the victim, Holliday, and another friend left to go to a nearby fast-food restaurant, Waliakum's.   As they were in their car preparing to leave, John ran past their car and fired a handgun three or four times at a group of people on the other side of the street.
>
> The victim, Holliday, and their friend arrived at Walaikum's at approximately 2:20 A.M.  The restaurant, which occupies a small space, was crowded with customers.  About fifteen minutes later the defendants and their two companions entered the restaurant, looked around for about one minute or so, and walked out.  Less than one minute later, they reentered.  Tinsley talked with a girl standing behind Holliday,

and the other three remained near the door.  Brown said to the defendants, "That's one of them right there."   Jimmy asked, "Is that him right there?"   Brown said, "Yeah."  Jimmy then produced a silver handgun with a black handle.  John was standing right beside him.  Jimmy walked toward the victim, who seeing him approach, with a gun drawn, began to back away.  Holliday ran outside, The victim fell over some chairs and tables as he backed away, then crawled into a corner and begged Jimmy for his life.  Jimmy shot him four or five times.

Alton Clarke, a patron of the restaurant, tried to leave but was confronted by John, who was armed with a black handgun.  Clarke was allowed to leave after he said he had nothing to do with the victim.  John then approached the victim and fired a shot at him.  Clarke heard the shot from outside the restaurant and said it sounded different from the shots he heard when he was inside.  Willy Wiggins, who owned Walaikum's, saw the first gunman shooting at the victim, then went to the back of the restaurant to telephone the police.

The defendants, Brown and Tinsley fled the scene in a gold Lexus automobile.  John drove, Jimmy sat in the front passenger seat, and the other two sat in the back.  Police arrived and pursued them.  At one point a marked police cruiser with its blue lights flashing was forced off the road to avoid a head-on collision with the Lexus.  During the chase two guns were thrown out of the front passenger window of the Lexus. The Lexus turned up a dead end street and stopped.  The occupants were apprehended as they tried to flee on foot.  The two guns thrown from the Lexus were recovered.   One was a silver-plated nine millimeter Ruger semiautomatic handgun with a black handle.  The other was a black nine millimeter Heckler & Koch semiautomatic handgun.  Ballistics evidence recovered from both inside and outside the restaurant included six shell casings (three from the Ruger, and three from the Heckler & Koch), and four bullet fragments (two from the Ruger, and two from the Heckler & Koch, including a projectile removed from the victim's body).  No identifiable fingerprints could be retrieved from either gun.

The victim died from an infection due to his wounds.  He had been shot three times. One shot passed through his left forearm and into his ribs.  Two shots entered the left side of his abdomen and passed through his body.  A fourth was recovered from his body.  The victim had no gunpowder residue on his clothes, indicating that he had been shot from a distance of at least three feet.

The four men were tried together on a theory of murder by joint venture.  Both John and Jimmy testified, but neither Brown nor Tinsley testified.   The jury found the defendants guilty, and acquitted Brown and Tinsley.

*Commonwealth v. Evans*, 439 Mass. 184, 186-188, 786 N.E.2d 375, 381-382 (2003) (S.A.

5).  Other findings of fact by the SJC will be recited herein as they relate to specific issues

raised by the petitioner.

## ARGUMENT

### Standard of Review

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24, 27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id.* at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 10 (2002) (per

curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute. "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is satisfied . . . ." *Williams*, 529 U.S. at 412. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts*." *Id*. at 412-13. The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be entitled to relief under the latter clause, the burden is on petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable" manner. *Id*. at 409-10. Since "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

Factual determinations of state courts are granted similar deference.  To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable.  *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)).  Objective unreasonableness is not merely an incorrect or erroneous decision.  *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error.  Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Sanna v. DiPaolo*, 265 F.3d 1, 7.  *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

## Constitutionality of the Standard of Review

The petitioner challenges the constitutionality of the AEDPA's habeas corpus provisions, claiming that the AEDPA's restrictions constitute a suspension of the writ, substitutes a new remedial regime that differs from the writ enshrined in Art. I, § 9, cl. 2 and fails to adequately protect the freedom from bodily constraint that is protected by the Due Process Clause (Memo, p. 28). The petitioner also claims that Article III prohibits federal court deference to state court rulings on interpreting and applying federal law. Where the AEPDA was enacted in 1996 and has survived numerous challenges to its constitutionality, and where the Supreme Court and all of the federal circuits have continued to apply its provisions, these challenges must fail.

The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9. The Supreme Court and other courts have repeatedly recognized that it is generally Congress' prerogative to define the scope of the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 663-665 (1996). *See Lonchar v. Thomas*, 517 U.S. 314, 323 (1996) ( judgments about the proper scope of the writ are "normally for Congress to make"). In *Felker*, the Supreme Court held that the restriction on second and successive habeas petitions under § 2244(b) does not constitute a suspension of the writ where it merely codified some of the pre-existing limits and further restricted the availability of relief to habeas petitioners. *Felker*, 518 U.S. at 664.

Similarly, the amendments to 28 U.S.C. § 2254 (d)(1) do not suspend the privilege of the writ, but rather, "represent a modest congressional alteration of the standards

pursuant to which the writ issues." *Green v. French*, 143 F.3d 865, 875 (4th Cir. 1998)., citing *Lindh V. Murphy*, 96 F.3d 856, 867 (7th Cir. 1996) (to alter the standards on which writs issue is not to "suspend" the privilege of the writ).  Therefore, the amendments to § 2254, requiring that a state court decision be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court were a proper restriction on the writ of habeas corpus and do not serve to suspend the writ under Art. I.

The petitioner's further argument that AEDPA violates Article III because it requires federal court deference to state court rulings interpreting federal law must also fail.  The Supreme Court has made it clear that state courts should have the first opportunity to correct constitutional errors made in  their proceedings.  In *Rose v. Lundy*, 455 U.S. 509, 518 (1982), the Court held that because ""it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,"" federal courts apply the doctrine of comity, which ""teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter,"" (*quoting Darr v. Buford*, 339 U.S. 200, 204 (1950)).  This doctrine serves as the basis for the exhaustion requirement for habeas petitions, see Argument IA, infra.

Thus, because the standard of review under AEDPA is constitutional, this Court should use it to analyze the petitioner's claims.

**I.    CLAIM 3(C) IS NOT EXHAUSTED, AND, IN ANY EVENT, MARVETTE NEAL'S IMPEACHMENT BY A PRIOR INCONSISTENT STATEMENT WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF SUPREME COURT PRECEDENT AND THE ADMISSION OF HIS GRAND JURY TESTIMONY DID NOT HAVE A SUBSTANTIAL AND INJURIOUS EFFECT ON THE JURY'S VERDICT.**

A.    The Claim is Unexhausted.

Petitioner's claim that the trial judge violated his rights to confrontation and due process when he allowed the Commonwealth to introduce Marvette Neal's grand jury testimony and his prior statement to police was not properly exhausted in the state court. The petitioner did not raise the federal nature of the claim in his brief to the Supreme Judicial Court. [3]

It is well-established that "a federal court should not consider questions posed in a habeas petition until the 'power of the highest state court in respect to such questions' has been exhausted." *Mele v. Fitchburg District Court*, 850 F.2d 817, 819 (1st Cir. 1988), *quoting United States ex rel. Kennedy v. Tyler*, 269 U.S. 13, 17 (1925). *See Rose v. Lundy*, 455 U.S. at 518-19; *Adelson v. DiPaola*, 131 F.3d 259, 261-262 (1st Cir. 1997); 28 U.S.C. §2254(b)(1)(A). The exhaustion principle, in addition to ensuring that state courts have the first opportunity to correct their own constitutional errors made in their proceedings, enables federal courts to accord appropriate respect to the sovereignty of the states and promotes comity by "minimiz[ing] friction between our federal and state systems of justice." *Rose*, 455 U.S. at 518. *See Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *Duckworth v. Serrano*, 454 U.S. 1, 3 (1984); *Scarpa v. DuBois*, 38 F.3d 1, 6 (1st Cir. 1994),

---

[3]    The respondent did not raise exhaustion as a defense in his answer, but under 28 U.S.C. § 2254(b)(3) the exhaustion requirement is not waived unless the State expressly waives it.

*cert. denied,* 513 U.S. 1129 (1995); *Mele*, 850 F.2d at 819.  *See also Ex parte Royall*, 117

U.S. 241, 251 (1886)(state and federal courts are "equally bound to guard and protect

rights secured by the Constitution").

A claim  in state court that contains a mere inkling of a federal claim, not one "likely

to alert the court to the claim's federal nature," will not suffice for exhaustion purposes.

*Nadworny v. Fair*, 872 F.2d 1093, 1098 (1st Cir. 1989), quoting *Daye v. Attorney General*

*of New York*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc), *cert. denied*, 464 U.S. 1048

(1984).  *See Scarpa v. DuBois*, 38 F.3d at 6.  It also is not enough that all the facts

necessary to support the federal claim were before the state court, or that a somewhat

similar state-law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v.*

*Connor*, 404 U.S. 270, 276-277 (1971).  *See Duncan v. Henry*, 513 U.S. at 366.  Indeed,

"[t]he exhaustion requirement requires a habeas applicant to do more than scatter some

makeshift needles in the haystack of the state court record.  The ground relied upon must

be presented face-up and squarely; the federal question must be plainly defined.  Oblique

references [that] hint that a [federal] theory may be lurking in the woodwork will not turn the

exhaustion trick."  *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988).  It is the

petitioner's heavy burden to demonstrate that his now claimed federal errors were fairly

presented to the state's highest court.  *Nadworny v. Fair,* 872 F.2d at 1098.  In order for

it to be said that the petitioner has exhausted his state remedies as to his federal habeas

claims, he must have presented the state court with appropriate federal trappings such as:

> specific constitutional language, constitutional citation, appropriate federal
> precedent, substantive constitutional analogy, argument with no masking
> state-law character, ... such as would in all likelihood alert a reasonable jurist
> as to the existence of the federal question.

*Id*. at 1101. "The fewer the trappings that adorn a petitioner's state-court filings, the less likely that [a federal court] will find his federal claim to have been exhausted." *Adelson*, 131 F.3d at 262.

The petitioner did not sufficiently raise the federal nature of the claim regarding the admission of Marvette Neal's grand jury testimony and prior statement to the Supreme Judicial Court in his brief on direct appeal. The only reference to a federal claim in his brief was in the heading, where he stated that the admission of the evidence violated his right to confrontation and due process. (S.A. 2, p. 63).[4] The remainder of the argument focuses on state law (S.A. 2, p. 63-66). This was not sufficient to alert the SJC to the federal nature of the claim (S.A. 5). The First Circuit Court has held that "the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim." *Adelson*, 131 F.3d at 263. Because his petition contain unexhausted claims, it should be dismissed as a mixed petition. *Rose v. Lundy*, 455 U.S. at 510.

---

[4] This can be contrasted to petitioner's other claim regarding his right to confrontation (see Argument III, infra) in which he specifically argued that he was deprived of his *state and federal* constitutional right to properly confront and cross-examine Alton Clarke and cited to *Davis v. Alaska*, 415 U.S. 308 (1974).

B.    The Admission of Marvette Neal's Grand Jury Testimony and Prior Statements to
Police are Issues of State Evidentiary Law.  In any event, the Admission of Neal's
Grand Jury Testimony Did Not Have a Substantial and Injurious Effect on the Jury's
Verdict Where it Was Cumulative to Other Testimony and Neal's Impeachment by
a Prior Inconsistent Statement Was Not Contrary to or an Unreasonable Application
of Supreme Court Precedent Where Cross-examination Opened the Door to Such
Impeachment.

If the Court chooses to consider this claim despite the petitioner's failure to exhaust

the federal nature of the claim, it should deny relief.  The claims regarding the admission

of Marvette Neal's grand jury testimony and his impeachment through prior inconsistent

statement to the police were issues of state evidentiary law and the SJC properly analyzed

them as such.  Errors of state law do not provide a basis for federal habeas corpus relief.

Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

It is not the province of a federal habeas court to reexamine state court determinations of

state law questions.  Lewis v. Jeffers, 497 U.S. at 780-781.  A federal court may issue a

writ of habeas corpus only when a conviction violates the constitution, laws or treaties of

the United States.  Estelle v. McGuire, 502 U.S. at 67-68; 28 U.S.C. §§2241, 2254.  "Even

if an error of state law could be sufficiently egregious to amount to a denial of equal

protection or of due process of law guaranteed by the Fourteenth Amendment," a federal

court may not issue a writ to redress such a deprivation if the claims are merely ancillary

to perceived errors of state law.  Pulley v. Harris, 465 U.S. 37, 41 (1984).

Neal testified at trial that he knew the victim and the Evans brothers, but could not

remember whether he had seen the petitioner and his brother at Cortee's or Walaikum's

on the night of the shooting.  (Tr. IV/175, 181).  He also testified that he did not remember

what he had told the grand jury regarding his observations on the night of the shooting,

although he believed that he was truthful when testifying before the grand jury (Tr. IV/184-186).  He also testified that he was interviewed by Boston police sixteen days after the shooting (February 10, 1995), and flatly denied telling the police at that time that the petitioner and his brother were the shooters (Tr. IV/194-195).

On the next day of trial, Detective Kenneth Dorch testified about Neal's February 10, 1995 statement, in which Neal identified the petitioner and his brother as the shooters (Tr. V/15-24).  Prior to this testimony, the judge instructed the jury that Neal's prior statement could not be considered evidence of what actually happened on the night of the shooting, but only for evaluating the credibility of Neal (Tr. V/14-15).  He reminded the jury of this instruction five times during Dorch's testimony (Tr. V/17, 20, 23, 24, 24-25).  The SJC held that Dorch's testimony was properly admitted to impeach Neal's testimony on cross-examination that he did not see the petitioner shoot anyone at Walaikum's in the early morning of January 25, 1995 and had not seen the petitioner with a gun in his hand that night.  *Commonwealth v. Evans*, 439 Mass. at 192, 786 N.E.2d at 384.

Two days later, Carol McCarthy, the court reporter who had recorded and transcribed Neal's grand jury testimony, affirmed that the transcript was accurate (Tr. VII/19-22, 25-26).  Over objection, the trial judge allowed the prosecutor to recite the portions of Neal's grand jury testimony in which Neal claimed to have seen the petitioner and his brother at Cortee's and Walaikum's on the night of the murder (Tr. VII/23-26).  The judge admitted the testimony as substantive evidence under the past recollection recorded exception to the hearsay rule (Tr. IV/177, 183).  The SJC held that since Neal claimed he had no memory of his grand jury testimony and did not adopt the substance of the testimony, it was improperly admitted under the past recollection recorded exception to the

15

hearsay rule. *Commonwealth v. Evans*, 439 Mass. at 189, 786 N.E.2d at 382. In citing to *Commonwealth v. Martinez*, 431 Mass. 168, 176. n.7 (2000), the court indicated that it did not consider the admission of the grand jury testimony to be a violation of the Confrontation Clause because Neal was available for cross-examination. Because there was no constitutional violation, the court did not review the error to determine whether it was harmless beyond a reasonable doubt, but only for prejudicial error. *See Chapman v. California*, 386 U. S. 18 (1967). The court went on to find that Neal's grand jury was not prejudicial because it was merely cumulative of other testimony. *Id.* at 191, 786 N.E. 2d at 383.

The SJC's use of this standard of review was not contrary to *Chapman*, as alleged by the petitioner. The SJC properly found that, although the admission of Neal's grand jury testimony was improperly admitted under past recollection recorded exception to the hearsay rule, it did not violate the petitioner's Sixth Amendment rights. This conclusion was reasonable where the circumstances were similar to those in *United States v. Owen*, 484 U.S. 554 (1988), which the petitioner attempts to distinguish. In *Owen*, the Supreme Court held that the admission of a victim's prior identification of the defendant did not violate the Confrontation Clause even though the victim was unable to explain the basis of the identification due to memory loss. In coming to this conclusion, the Court reiterated that "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." *Id.* at 559, quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). Similarly, the witness in this case testified that he did not remember what he had

testified to in the grand jury but thought that he had been truthful at the time (Tr. IV/184-186). He also denied telling the police that the petitioner and his brother were the shooters (Tr. IV/193-195). Petitioner's counsel was then able to cross-examine the witness further to clarify that he identified the petitioners' photographs as Jimmy and John Evans but did not identify them as the shooters (Tr. IV/198-199). Under these circumstances, where the petitioner had a similar opportunity for effective cross-examination the SJC's decision was not contrary to or an unreasonable application of *Owen*.

Even if this court finds that the SJC's harmless error analysis was contrary to or an unreasonable application of *Chapman*, the Supreme Court has held that a less onerous standard of review should be applied to claims of constitutional error raised on habeas review.[5] Under this standard, the petitioner is not entitled to habeas relief for the constitutional error unless the error had a "substantial and injurious effect in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U. S. 619, 637 (1993); *Kotteakos v. United States*, 328 U. S. 750, 776 (1946). *See also Sinnott v. Duval,* 139 F.3d 12, 14-15 (1st Cir. 1998) ("The Supreme Court has made it clear that on collateral review of habeas cases involving trial error, the test for harmless error" is that set forth in *Brecht*). Although the *Brecht* standard is more lenient toward the government than the beyond a reasonable doubt standard of *Chapman v. California*, 386 U. S. 18 (1967), it is the respondent's burden to establish harmlessness under *Brecht*. *O'Neal v. McAninch*, 513 U. S. 432, 437-444 (1995). As the SJC set forth, Neal's statements to the grand jury that he saw the

---

[5] Confrontation Clause violations are trial type error that are subject to a harmless error analysis. *See Cruz v. New York*, 481 U. S. 186, 194 (1987); *Sinnott v. Duval*, 139 F.3d 12, 14-15 (1st Cir. 1998).

petitioner in Walaikum's on the night of the shooting were merely cumulative of other witnesses who had already testified to that.    Marcello Holliday saw both the petitioner and his brother at Cortee's nightclub (Tr. III/29-30).  Both petitioner and his brother testified and admitted that they had  been at Cortee's (Tr. VIII/38; IX/10).  The petitioner also admitted to at least going to the entrance of Walaikum's (Tr. IX/15).  Marcello Holliday saw the petitioner enter Walaikum's (Tr. III/41, 44-48), and Alton Clarke testified that the two shooters entered the driver's and front passenger seats of the Lexus automobile and the petitioner admitted to getting into the passenger side upon leaving the scene (Tr. VI/85-86, 89-90; IX/21).  Thus, the admission of Neal's grand jury testimony, in which he claimed to have seen the petitioner and his brother at Cortee's and Walaikum's on the night of the murder,  did not have a substantial and injurious effect on the jury's verdict.

If this court chooses to consider the petitioner's other confrontation clause claim regarding Neal's prior inconsistent statements, despite the fact that it is a state law evidentiary issue, it should deny it.   The SJC's determination that Detective Dorch's testimony was proper impeachment evidence was not contrary to or an unreasonable application of clearly established Supreme Court precedent.   It is clear that prior inconsistent statements are admissible to impeach a witness's testimony.  *United States v. Hale*, 422 U.S. 171, 176  (1975).  When  Neal testified on cross-examination that he never saw the petitioner with a gun, he opened the door to impeachment through Dorch's testimony of Neal's prior statements. The judge carefully instructed the jury that they were only to consider the prior statements as to how it affected the credibility of Neal's testimony and reminded them of this several times during Dorch's testimony.

18

## II.   THE SJC'S DETERMINATION THAT THE PETITIONER'S COUNSEL'S FAILURE TO INVESTIGATE AND DEVELOP FORENSIC EVIDENCE WAS NOT INEFFECTIVE ASSISTANCE OF COUNSEL WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT PRECEDENT.

*Strickland v. Washington,* 466 U.S. 668 (1984) supplies the clearly established federal law governing claims of ineffective assistance of trial counsel. *See Williams v. Taylor*, 529 U.S. at 390-391. *Strickland* mandates that a defendant who claims that trial counsel's assistance was so ineffective as to require reversal of a conviction must make two showings, on which the defendant bears the burden of proof. *Strickland,* 466 U.S. at 687. First, the defendant must show that counsel's performance was constitutionally "deficient," meaning "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687. A court assessing such a challenge "must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and "must indulge a strong presumption that counsel's conduct fell within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689-690. See Genius v. Pepe, 147 F.3d 64, 66 (1st Cir. 1998) ("counsel's judgments in formulating the defense strategy are entitled to substantial deference"), cert. denied sub nom., Genius v. Hall, 526 U.S. 1121 (1999). The standard "demands a fairly tolerant approach," Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994), cert. denied, 513 U.S. 1129 (1995), as the Constitution does not guarantee "a letter-perfect defense or a successful defense." United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991), cert. denied, 502 U.S. 1079 (1992). See Williams v. Taylor, 529 U.S. at 390-391; Matthews v.

Rakiey, 54 F.3d 908, 916 (1st Cir. 1995).

Second, the defendant must show that counsel's deficient performance resulted in "prejudice" to the defense, meaning "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was reliable." *Strickland,* 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In making the determination "whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Id.* at 694. The defendant must show *both* deficient performance and prejudice, otherwise "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland,* 466 U.S. at 687.

The petitioner claims that the SJC's determination that trial counsel was not ineffective for his failure to failure to retain an investigator and to hire forensic investigators was an unreasonable application of the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 690 (1984) (Pet. Memo pp. 31-43). The petitioner also claims that the SJC failed to apply the proper standard for prejudice and therefore the decision was also contrary to *Strickland* (Pet. Memo, pp. 55-61). The SJC's decision was neither contrary to nor an unreasonable application of *Strickland*.

In analyzing the petitioner's ineffective claims, the SJC concluded that "there was no reason for counsel to believe that any testing would benefit the defense or that any hoped for results would likely have influenced the jury's conclusion." *Evans*, 439 Mass. at

20

201, 786 N.E.2d at 390.  Where this standard for evaluating first degree murder cases pursuant to G.L. c. 278, § 33E is more favorable to the defendant than the constitutional standard for evaluating ineffective assistance claims, the petitioner's claim that the SJC's analysis of the prejudice prong was contrary to *Strickland* must fail.  *Commonwealth v. Wright*, 411 Mass. 678, 682, 584 N.E.2d 621 (1992). *See also Commonwealth v. Graham*, 431 Mass. 282, 289, 727 N.E.2d 51 (2000) (Under 33E, the SJC reviews counsel's omissions to determine whether they were erroneous and likely to have influenced the jury's conclusions).

The SJC based its conclusion on the facts that even if further investigation had proven what the petitioner claimed, it would not have helped the defense in any significant way.  These conclusions were a reasonable application of *Strickland* where any expert testimony would have been marginally relevant at best.

First, contrary to the petitioner's claim, his trial counsel did not completely fail to investigate the evidence.  His brother's counsel did hire an investigator to examine the evidence and petitioner's counsel was privy to all of his findings (R. 15-16, 340-341; M.Tr. (9/27/99) 55-57).  Furthermore, counsel had no apparent reason to believe that further scientific testing would be beneficial.  The Commonwealth's tests produced no conclusive evidence (beyond that linking the guns from the Lexus to the shooting at Walaikum's, which the petitioner does not challenge), and there were no indications that further testing would produce different or better results.  Counsel's emphasis on impeaching the eyewitness identification testimony was a sound strategy where the Commonwealth's case rested heavily on this evidence.  As the First Circuit noted in *Genius v. Pepe*, 147 F.3d at 67:

> Even when . . . the costs of an expert are borne by the state, pursuing any line of inquiry involves some use of time and distracts in some degree from other possible defenses that might be pursued. As the Eleventh Circuit has said, "counsel . . . is not required to pursue every path until it bears fruit or until all available hope withers." *Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1984), *cert. denied*, 469 U.S. 1181 (1985).

Therefore, counsel's decision not to consult with experts regarding the blood evidence, the ballistics evidence or the fingerprint evidence was not error.

Furthermore, petitioner failed to show that the proposed experts' tests would have been significantly exculpatory, even if they produced the hoped-for results.[6]  As the SJC found, it is not likely that a ballistics expert could have helped the defense in any material respect where petitioner himself testified that the Ruger he was holding accidentally discharged three times as it was pointing downwards at the entrance to Walaikum's. *Evans*, 439 Mass. at 201, 786 N.E.2d at 390. Since the victim was lying on the floor when he was shot, evidence that petitioner's shots were fired downward would have been entirely consistent with the Commonwealth's theory that petitioner was aiming at the victim, not firing accidentally. Moreover, the precise path of the petitioner's bullets would have been immaterial to his guilt in light of the restaurant's small size. *See Commonwealth v. Jenks*, 426 Mass. 582, 586, 689 N.E.2d 820 (1998) (firing gun aimlessly in crowded room was "malicious conduct in the plainest sense"). A bullet fragment from the Ruger fired by the petitioner was found on a rug in the middle of the floor at Walaikum's (Tr. VI/30, VII/77-79). There was blood found on the bullet fragment, and the SJC found that the jury could

---

[6] Trial counsel's statement in his affidavit that he "was not aware at the time of any advantage in consulting with these types of experts" (R. 339-341) indicates his reasonable belief that such tests would not have furthered the defense in any significant way.

infer that it was one of the bullets that passed through the victim's body. Evans, 439 Mass. at 201, 786 N.E.2d at 390. The petitioner also asserts that a ballistics expert would test the "unchallenged assertion" (Pet. Memo p. 37) that the bullet fragment had not been moved, but does not indicate how an expert could do that.

Furthermore, as the SJC properly found, the presence of Jackson's blood on Tinsley's coat would not have undermined the Commonwealth's case, since the Commonwealth "had proceeded at trial on the basis that all four codefendants were in close proximity to the victim in the confined space of Walaikum's. The prosecutor conceded twice at trial that the blood on Tinsley's coat could be the victim's and he introduced evidence that the blood type on Tinsley's coat was consistent with that of both the victim and Tinsley. Thus, the blood evidence was not a substantial part of the Commonwealth's case." *Evans*, 439 Mass. at 201, 786 N.E.2d at 390.[7] Even if a blood expert could have determined that Tinsley shot the victim, that would not have undermined the evidence from which the jury could have inferred that the petitioner was the second shooter.

Finally, the SJC reasonably found that trial counsel's failure to pursue fingerprint testing of the guns would not have produced anything better for the defense. The SJC held that:

> There is no reason to believe that the Commonwealth's fingerprint expert was wrong in concluding that there was insufficient fingerprint detail on either gun to make an identification. Nor is there reason to believe that he was wrong in concluding that in only about two per cent of cases do guns yield identifiable fingerprints, and in cases where prints can be identified, the age of the print cannot be determined.

---

[7] Most of the blood was also on the back of the coat (Tr. VI/19), which hardly suggests that it got there while Tinsley was shooting the victim.

> Thus fingerprint evidence also was not a substantial part of the Commonwealth's case (citation omitted).  Even if fingerprint evidence could show that Tinsley had once touched the Heckler & Koch handgun, it would not prove that John had also touched it.  Given the Commonwealth's eyewitness testimony that John had fired the Heckler & Koch, and Jimmy's admission that he fired the Ruger at Walaikum's, the Commonwealth's case against both John and Jimmy would not have been undermined.  Moreover, as discussed, even if Tinsley had been one of the shooters, the evidence of joint venture was overwhelming.

*Evans*, 439 Mass. at 202, 786 N.E.2d at 391.  Where the expert testimony suggested by the petitioner would not have strengthened the petitioner's defense, counsel's failure to pursue it did not constitute ineffective assistance of counsel.  The petitioner's argument that the SJC failed to consider the gaps and inconsistencies in the Commonwealth's case does not assist him where petitioner's counsel ably impeached the eyewitnesses on cross-examination and the jury was well aware of the inconsistencies.

Moreover, the SJC's findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254 (e)(1) and must be rebutted by clear and convincing evidence.  Petitioner's assertion that the jury could have drawn opposite inferences from the evidence presented does not rebut the presumption of correctness and does not demonstrate that the SJC's decision was unreasonable.  *See Dennis v. Mitchell*, 354 F.3d at 518 ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Since further expert testimony by the petitioner would not have assisted his defense, funds for such experts could not establish prejudice under the *Strickland* analysis.  Petitioner's argument that the state court's denial of such funds precluded him from vindicating his ineffective assistance claim must therefore fail (Pet. Memo pp. 42-43).  Prejudice should not be presumed here where there was good reasons for trial counsel's

failure to seek further testing.  Contrary to petitioner's assertion, forensic evidence pointing to Tinsley as a shooter would not have led to a different result where the petitioner admitted to being at the entrance to Walaikum's when his gun went off.  Eyewitnesses at the scene testified that there were two shooters and ballistic evidence recovered from both inside and outside the restaurant included shell casings and bullet fragments from the two guns thrown out of the Lexus.  *Evans*, 439 Mass. at 188, 786 N.E.2d at 381.

Where the SJC's decision was neither contrary to nor an unreasonable application of *Strickland* and its progeny, habeas corpus relief must be denied on this claim.

## III.    THE SJC'S HOLDING THAT THE TRIAL JUDGE DID NOT ABUSE HIS DISCRETION IN LIMITING THE PETITIONER'S IMPEACHMENT OF A COMMONWEALTH WITNESS WAS NOT CONTRARY TO OR AN UNREASONABLE APPLICATION OF CLEARLY ESTABLISHED SUPREME COURT LAW.

The petitioner claims that his Sixth Amendment right to confrontation was also violated when the trial judge barred him from naming the specific charges pending against a prosecution witness and instead allowed him to refer to the charges only as "serious felony charges."   The pending charges included aggravated rape and kidnaping, and the petitioner claims that without naming the specific crimes, he was unable to effectively portray the witness's bias.  On this issue, the SJC found:

> Where there is some evidence of bias, a defendant has a constitutional right to cross-examine a prosecution witness to show bias, but "the judge has broad discretion to determine the scope and extent of cross-examination." *Commonwealth v. Johnson*, 431 Mass. 535, 538, 728 N.E.2d 281 (2000). Although it would ordinarily be helpful for the jurors to know the nature of the unresolved charges pending against a witness so that they will have some means of gauging the extent to which the witness may be biased, much must be left to the discretion of the trial judge in this area." *Commonwealth v. Lewis*, 12 Mass. App. Ct. 562, 573 n.20, 427 N.E.2d 934 (1981).

> The defendants were able to explore adequately the question and extent of Clarke's bias and motive to cooperate with the prosecution arising from the pending "serious felony" charges without referring to the specific charge.    Clarke testified emphatically that he was promised nothing and he expected nothing.    Clarke in fact later went to trial and was convicted of aggravated rape and kidnaping.    His convictions were reversed on appeal. *See Commonwealth v. Clarke*, 48 Mass. App. Ct. 482, 722 N.E.2d 987 (2000).[8]    The defendants have failed to show how the limitation on cross-examination was an abuse of discretion.

*Commonwealth v. Evans*, 439 Mass. at 188-189, 786 N.E.2d at 382.

The Supreme Court has held that "exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination,"

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986), (quoting *Davis v. Alaska*, 415 U.S. 308, 316-317 (1974)), but also recognizes that a trial judge has the discretion to limit defense counsel's inquiry into the potential bias of a prosecution witness.  *Id.*  ("trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant").  *See also Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam) ("the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish").  The trial judge in this case limited the evidence of the witness's pending charges in response to the prosecutor's argument that the aggravated rape charges facing the witness would be "disturbing and highly prejudicial" (Tr. VI/75).  This decision was well within his discretion and was not contrary to the above clearly established Supreme Court law.

---

[8]  Clarke was later re-tried and convicted of two counts of aggravated rape and one count of kidnaping.  The convictions were affirmed on appeal, 60 Mass. App. Ct. 1105, 799 N.E.2d 605 (2003).

Nor was the SJC's opinion an unreasonable application of the Supreme Court precedent set forth above. On direct examination, the witness testified that he was not offered any leniency with regard to his pending charges, nor did he expect anything in return for his testimony (Tr. VI/78-79). On cross-examination petitioner's counsel elicited the fact that the witness did not come forward and give a statement to police until six or seven months after he was indicted for "serious felony charges," some ten months after the shooting (Tr. VI/96-97, 99-100). Thus, the petitioner was given ample opportunity to examine the possible bias of the witness and to thereby infer to the jury that he had ulterior motives for coming forward at the time he did. This situation stands in stark contrast to *Davis, supra*, on which the petitioner relies, in which the court prohibited any inquiry into the witness's bias and thereby violated the defendant's constitutional confrontation rights. The limitation that the trial judge implemented in this case did not raise the same concerns as in *Davis* and was not an objectively reasonable application of Supreme Court caselaw. The petitioner is not entitled to habeas relief on this claim.

**IV. THE MERITS OF THIS HABEAS PETITION CAN BE DECIDED ON THE RECORD. THE PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING WHERE HE HAS NOT ESTABLISHED THAT THE FAILURE TO DEVELOP THE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ACTUALLY PREJUDICED HIS CASE.**

At the scheduling conference held on July 14, 2006, this court set a tentative date for an evidentiary hearing, and indicated that it expected the respondent to argue against such an evidentiary hearing in his memorandum. At the same scheduling conference, the petitioner indicated that his claims of ineffective assistance of counsel presented a serious constitutional violation and would benefit from an evidentiary hearing. Based on this

assertion and on the following summary of petitioner's procedural history regarding his attempts to develop the factual basis of the ineffective assistance claims, the respondent will assume that petitioner only seeks an evidentiary hearing on this issue and not the remaining two claims. The remaining two claims do not require any further factual development and may be analyzed on the record presented to this court.

Pursuant to 28 U.S.C. § 2254(e)(2),

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --

(A) the claim relies on --

(I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In state court petitioner filed a motion for new trial in which he raised ineffective assistance of counsel based on trial counsel's failure to consult with or hire certain forensic experts (see argument II, supra). In connection with this motion the petitioner also filed a series of motions for funds to hire such experts in order to further develop the ineffective assistance claims. On September 10, 1999, Judge Elizabeth Donovan denied the motion for funds and on December 30, 1999 she denied the motion for new trial. The petitioner filed a notice of appeal as to the denial of both motions and on September 27, 2001, Justice Judith Cowin issued an order staying the petitioner's appeal remanding the case

for a "determination as to the [petitioner's] motion for funds pursuant to the discretionary authority referenced in Mass. R. Crim.P. 30(c)(5), second sentence, effective October 1, 2001." Judge Donovan subsequently denied the motion for funds again on January 3, 2002. After holding a hearing on February 14, 2002, Judge Donovan issued another order denying the motion for funds on March 1, 2002. A motion for reconsideration and clarification was denied on April 11, 2002. The petitioner filed a notice of appeal of these post-remand orders and moved to consolidate these appeals with his direct appeal.

Although the factual bases for the ineffective assistance claims were not developed in state court, the petitioner cannot be said to have failed to develop the claim under § 2254 (e)(2). As several circuits have held, "where an applicant has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, §2254(e)(2) will not preclude an evidentiary hearing in federal court." *Cardwell v. Greene*, 152 F.3d 331, 337 (4th Cir. 1998). *See also McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); *Burris v. Parke*, 116 F.3d 256, 258-259 (7th Cir.), *cert. denied*, 522 U.S. 990 (1997); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997); *Love v. Morton*, 112 F.3d 131, 136 (3d Cir. 1997). "Because the term '[f]ailure implies omission, a decision not to introduce evidence when there was an opportunity, or a decision not to seek an opportunity,' an applicant 'fail[s]' to develop the evidence supporting a claim only if he or she relinquishes an opportunity to introduce evidence or neglects to seek such an opportunity." *Cardwell*, 152 F.3d at 337, (*quoting Burris*, 116 F.3d at 258).

Since § 2254(e)(2) does not apply, any request for an evidentiary hearing should

be evaluated under the old standard. *See Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992); *Townsend v. Sain*, 372 U.S. 293 (1963). Under the *Keeney/Townsend* standard, a federal evidentiary hearing may be conducted only if the habeas petitioner alleges facts which, if proved, would entitle him to relief and the state court -- for reasons beyond the control of the petitioner --  never considered the claim in a full and fair hearing. *Keeney*, 504 U.S. at 11; *Townsend*, 372 U.S. at 312. The petitioner submitted an affidavit from trial counsel in support of his ineffective assistance claim in which counsel stated that he did not hire a ballistics, fingerprint or blood expert because he was "not aware at the time of any advantage in consulting with" experts in these areas. (P.A. 62-63). Although counsel also stated that he "did not do so, not because there was any tactical advantage in not doing so," but, as the motion judge found "that does not mean that such a decision was still a tactical decision." (P.A. 54 n.15). Both the motion judge and the SJC determined that "there was no reason for counsel to believe that any testing would benefit the defense or that any hoped for results would likely have influenced the jury." *Commonwealth v. Evans*, 439 Mass. at 201, 786 N.E.2d at 390; P.A. 54-55.

As set forth in Argument II, *supra*, the Commonwealth's experts produced no conclusive evidence linking the petitioner to the crime and petitioner failed to show that the proposed experts' tests would have been significantly exculptatory. Petitioner admitted that he discharged his firearm at the entrance to Walaikum's and a bullet fragment fired from his Ruger was found on a rug in the middle of the floor. It is unlikely that a ballistics expert could have helped the defense. The Commonwealth conceded at trial that the blood on Tinsley's coat was consistent with that of both the victim and Tinsley, thus

defense counsel's failure to consult a blood expert to confirm that the blood came from the victim did not prejudice the petitioner's case.  Finally, the Commonwealth's fingerprint expert testified that there was insufficient fingerprint detail on either gun to make an identification.  Thus, fingerprint evidence was not a substantial part of the prosecution's case and there is no reason to believe that another expert would have found any further print detail with which to make an identification.  Both the motion judge's and the SJC's findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1) and the petitioner has failed to rebut this presumption by clear and convincing evidence.  Therefore, the petitioner has failed to fulfill the standard under *Keeney* and is not entitled to an evidentiary hearing.[9]

---

9      If the petitioner seeks funds for the experts he sought to consult in the state court through discovery in this court, the request should also be denied.  Rule 6(a) of the Rules Governing Section 2254 cases provides that:

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

To establish "good cause" a  petitioner must come forward with "specific allegations" as to the facts, which if fully developed, would entitle the petitioner to relief.  *Harris v. Nelson*, 394 U.S. 286, 300 (1969).  Good cause within the meaning of Habeas Rule 6(a) does not exist where, as here, the state court has already found facts contrary to the discovery petitioner seeks and the petitioner has not contradicted those findings with any specific allegations.  *See Harris*, 394 U.S. at 300 (to establish "good  cause"under Habeas Rule 6(a) the petitioner must come forward with "specific allegations" as to the facts, which if fully developed, would entitle petitioner to relief).  As set forth, *supra*, the petitioner's case was not prejudiced by his counsel's failure to consult independent experts regarding the blood, fingerprint and ballistics evidence.  He is not entitled to discovery or funds to consult such experts on habeas review.

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200 ext. 2832
Dated:  August 8, 2006                    BBO No. 561669

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, including Michael Schneider, counsel for the petitioner in this matter.  There are no non-registered participants involved in this case.

/s/ Susanne G. Reardon
Susanne G. Reardon
Assistant Attorney General

32