# United States District Court
# District of Massachusetts

Jimmy Evans,                              )
           *Petitioner,*          )
                                  )
v.                                        )     CA No. 04-12205
                                  )
Michael Thompson,                         )
   Superintendent, MCI Shirley,          )
           *Respondent.*         )

## Petitioner's Reply Memorandum
## in Support of Petition for Writ of Habeas Corpus

## 1.     Introduction.

This memorandum provides a brief reply to some of the points made by the Commonwealth of Massachusetts in its Memorandum in Opposition to Petition for Habeas Corpus ("CMO").   This memorandum does not go over ground previously covered in Evans' original memorandum in support of his petition for habeas corpus relief pursuant to 28 U.S.C. §2254.  Instead, it makes three critical points in response to arguments made by the Commonwealth in its opposition: (1) it explains that AEDPA's deference provision was a radical diminishment of the rights and powers of Article III judges, rather than a "modest congressional alteration" suggested by the Commonwealth; (2) it demonstrates that under the

First Circuit's forgiving standards, Evans adequately exhausted his federal claims in the state court; and (3) it explains why Evans is entitled to an evidentiary hearing.

**2.      The AEDPA's deference provision was not, as the Commonwealth avers, a "modest congressional alteration" of established habeas corpus standards but rather was a radical diminishment of the Great Writ that has unconstitutionally reduced federal judges to mechanically rubber-stamping interpretations of federal constitutional questions given by state court judges in violation of Article III in all but the most outrageous cases.**

Framed as part of a "war" on drugs, crime, and terrorism, the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241 et. seq.("AEDPA"),[1] as interpreted by the courts over the past ten years, has effectively waged a war on the right of those in custody to meaningful review of their federal constitutional claims, while at the same time eroding the authority of Article III judges to exercise their independent Article III and Supremacy Clause powers to review state court decisions for federal constitutional violations.  While this constitutional challenge to AEDPA was presented by the petitioners in their petition for certiorari

---

[1]Pub. L. 104-132, 110 Stat. 1214 (1996).

in the seminal case of *Williams v. Taylor,*[2] the Supreme Court denied certiorari on this issue and the two majority opinions in that case refrained from addressing the issue altogether.[3]

In its opposition the Commonwealth's asserts that §2254(d)(1) merely "represent[s] a modest alteration of the standards pursuant to which the writ issues" (CMO 9-10, citations omitted). It further contends that the doctrine of "comity" requires federal court deference to state court determination of federal law. These assertions mischaracterize the radical impact that AEDPA and the decisional law interpreting it have had on pre-existing habeas corpus practice.

Ultimately, the constitutional "vice" at the heart of §2254(d)(1) is that Article III judges are required in "'close cases' to close their eyes" on federal constitutional errors by deferring to faulty state court rulings on federal constitutional questions. This violates Article III and the Supremacy Clause.[4] As

---

[2]*See* Petition for Writ of Certiorari, *Williams v. Taylor,* 529 U.S. 363 (2000) (No. 98-8384).

[3]*See Williams v. Taylor,* 526 U.S. 1050 (1999) (mem.).

[4]Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice & Procedure* (4th ed.2001) & Suppl. (2006), §32.4, pp. 1462-1497 (reaching this conclusion after making a close evaluation of the historical evidence concerning the framing of the constitution and after examining over two centuries of case law interpreting Article III and the Supremacy Clause). *See also Chapman v. California*, 386 U.S. 18 (1967) (Black, J.) (recognizing that determining the circumstances under which state court rules limiting remedies for federal

this Court (per Judge Young) has recognized, while Congress may have the

constitutional prerogative to expand and contract the jurisdictional contours of

Article III judges, Congress may not altogether vitiate the power of Article III

judges to remedy federal constitutional violations.[5]  This is particularly true where

the Article III powers of the federal courts are fortified by an independent

constitutional right, such as the Sixth Amendment right to a jury trial in criminal

cases or, as here, Article I, §9, cl. 2, and the Fourteenth Amendment due process

right to habeas corpus relief.[6]

---

constitutional violations was a federal question and that the federal courts were not
permitted to defer to state court rulings on this issue).

[5]*Enwonwu v. Chertoff,* 376 F. Supp. 2d 42, 85 (D. Mass. 2005).  *See also
United States v. Kandirakas*, ___ F. Supp. 2d ___, 2006 WL 22147610 *19 et seq.
(D. Mass. 2006) (discussing the interplay between Article III and the Sixth
Amendment right to a jury trial); *United States v. Green,* 346 F. Supp. 2d 259 (D.
Mass. 2004) (noting that the federal "judicial power ... can be exercised only by
Article III judges").

[6]*Enwonwu,* 376 F. Supp. 2d at 78-85 (observing that while Congress has the
power to restrict the district courts of jurisdiction to review alien removal orders,
the writ of habeas corpus is "constitutionally protected" under Article I, §9, cl. 2,
and that "courts must be cognizant that interpreting [statutes such as the REAL ID
Act] to pinch too tightly on access to the writ may create significant constitutional
concerns").  *See also Hamdan v. Rumsfeld,* 126 S. Ct. 1749, 2764 (2006)
(declining to reach issue of whether congressional enactment of provisions
stripping the federal courts of jurisdiction over Guantanamo inmates
constitutionally infringed on the jurisdiction of Article III courts); Jordan Steiker,
"Incorporating the Suspension Clause: Is There a Constitutional Right to Federal
Habeas Corpus for State Prisoners?," 92 Mich. L. Rev. 862 (1994) (arguing that
Fourteenth Amendment due process has incorporated the right of state prisoners to

Although invalidating §2254(d)(1) may seem at odds with numerous post-AEDPA cases in the federal courts, this Court is constitutionally required to exercise its constitutional power — and duty — as a *federal* Article III court to review the state court decision to determine whether *federal* constitutional errors in violation of the "supreme law of the land," and if so, whether these errors had a "substantial and injurious effect or influence in determining the jury's verdict."[7]

Of course, even under the *Williams v. Taylor*[8] standard, Evans maintains that habeas corpus relief is warranted.

**3.    Evans exhausted all of his federal claims, including his claim that the admission of Neal's extrajudicial statements violated the Confrontation and Due Process Clauses; if not, this Court should permit Evans to withdraw any unexhausted claim and to proceed with the remainder of his petition.**

**A.    Evans' claim challenging the admission of Neal's testimony was adequately exhausted under the First Circuit's "fairly generous" standards.**

The Commonwealth's memorandum leaves the misimpression that the First Circuit has been stingy in evaluating exhaustion claims, when in fact, "[t]his

---

invoke habeas corpus to challenge their state convictions).

[7]*Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993), *quoting Kotteakos v. United States,* 328 U.S. 750, 776 (1946).

[8]526 U.S. 1050.

circuit's rules about what constitutes presenting a federal issue are fairly generous."[9]  Indeed, "there are myriad ways in which a petitioner might satisfy his or her obligation to fairly present a federal constitutional issue to a state's highest court."[10] Although not "exhaustive,"[11] the list includes: "(1) citing a specific provision of the Constitution; (2) presenting the substance of a federal constitutional claim in such manner that it likely alerted the state court to the claim's federal nature; (3) reliance on federal constitutional precedents;  and (4) claiming a particular right specifically guaranteed by the Constitution."[12]  In addition, a claim "arising under and asserted in terms of state law," will also be deemed exhausted if, "as a practical matter," the claim is "indistinguishable from one arising under federal law."[13]

There are at least five reasons why Evans' appellate brief adequately alerted the Massachusetts Supreme Judicial Court ("SJC") to the federal dimension of the constitutional confrontation and due process violations caused by the admission of

---

[9]*Goodrich v. Hall,* 448 F.3d 45, 47-48 (1st Cir. 2006)

[10]*Barresi v. Maloney,* 296 F.3d 48, 51 -52 (1st Cir. 2002).

[11]*Gagne v. Fair,* 835 F.2d 6, 7 (1st Cir.1987)

[12]*Barresi v. Maloney,* 296 F.3d at 51 -52.

[13]*Nadworny v. Fair,* 872 F.2d 1093, 1098 (1st Cir. 1989)

Marvette Neal's extrajudicial statements.

First, as the Commonwealth acknowledges, the heading of Point VI of Evans' brief explicitly states that admission of the extrajudicial statements of Marvette Neal were an "abuse of discretion in violation of the defendant's ***right to confrontation and due process,*** where the court's treatment of Neal was so different from its treatment of Eddie Hawkins" (Pet. Brief 63) (upper case reduced to lower case; emphasis added).

Second, Evans' analysis in Point IV relied on the seminal Massachusetts case of *Commonwealth v. Daye,* 393 Mass. 55, 74 (1984) to support his claim that the trial judge erred in admitting Neal's prior statements as "substantive evidence" because Neil could not have been "effectively cross-examined" either before the grand jury or in making prior statements to the police (Pet. Brief 64). Evans' citation is significant because *Daye* expressly relied on the U.S. Supreme Court's federal constitutional analysis in *California v. Green,* 399 U.S. 149, 170 (1970), to support *Daye's* conclusion that while "inconsistent grand jury testimony may be admitted in limited circumstances for its probative worth, we will not permit convictions based exclusively on inconsistent extrajudicial testimony to stand."[14] Evans therefore presented his federal constitutional issue in "claim[ing] a particular

---

[14]*Daye*, 393 Mass. at 74.

right specifically guaranteed by the Constitution,"[15] and in relying on state cases that specifically invoked  federal constitutional precedents.[16]

Third, the heading in Point VI expressly contrasts the treatment of Neal's extrajudicial statements and those of Eddie Hawkins.  In his discussion of the Hawkins issue in Point IV, Evans explicitly relies upon the "United States Constitution, Amends. VI, XIV" (Pet. Brief 57).   Evans also relies on cases such as  *Commonwealth v. Jewett,* 392 Mass. 558, 562 (1984), and *Commonweath v. Keizer,* 377 Mass. 264, 267 (1979), which explicitly address the key federal constitutional confrontation and due process concerns at issue here and rely on federal case law in the wake of *California v. Green,* 399 149 (1970).  By making the contrast to the treatment of Hawkins explicit, Evans effectively incorporated the federal constitutional analysis in Point IV into his discussion of Neal in Point VI.

Fourth, Evans concluded his discussion of Neal's extrajudicial statements in Point VI by expressly referring to the "right to confrontation" as well as to *Chapman v. California* and its harmless-beyond-a-reasonable-doubt standard for

---

[15]*Barresi v. Maloney,* 296 F.3d 48, 51 -52 (1st Cir. 2002).

[16]*See Goodrich v. Hall,* 448 F.3d 45, 47-48 (1st Cir. 2006) (even though petitioner failed to mention federal due process claim in his ALOFAR, he "primarily relied" on state cases "invoking federal due process").

evaluating federal constitutional error:

> In light of the fact that the Commonwealth had a less than overwhelming case, ... the erroneous admission of Neal's testimony, violated the defendant's right to confrontation, and cannot be said to have been harmless beyond a reasonable doubt.  See *Commonwealth v. Vinnie*, 428 U.S. 161, 164 (1998), citing *Chapman v. California,* 386 U.S. 18, 24 (1967).

The reference to *Chapman* — and not simply to *Vinnie* — strongly suggests that Evans was seeking to remedy a ***federal*** constitutional violation.  Moreover, Evans never made a separate argument based on the distinctive language or history of the cognate state constitutional provisions.[17] Because Evans' state constitutional claim was "indistinguishable from one arising under federal law,"[18] it should be deemed to have been exhausted.

Finally, were there any doubt that Evans was raising a federal as well as a state constitutional claim, Evans specifically included in his Addendum the text of Amendments V, VI, and XIV of the United States Constitution in accordance with the Massachusetts appellate rule requiring the inclusion of the text of specific constitutional provisions "[i]f determination of the issues presented requires

---

[17]*Nadworny v. Fair,* 872 F.2d 1093, 1099 (1st Cir. 1989) (distinctive "state-law formulations should most often be construed as raising purely state-law issues").

[18]*Id.,* at 1099-100, *citing Picard*, 404 U.S. at 277.

consideration of constitutional provisions, statutes, rules, regulations, etc."[19]

Even if counsel's briefing of the federal constitutional claim was not as artfully crafted as it could have been, it nonetheless adequately alerted the SJC to the federal constitutional dimensions of the issues addressed. Under the "fairly generous" standards adopted in this circuit, the issue should thus be deemed to have been fully exhausted.

**B.    Even if the Neal claim was not exhausted, this Court should permit Evans to withdraw the claim and proceed with the fully exhausted claims.**

If this Court were to determine that Evans' claim relating to Neal's extrajudicial statements was not properly exhausted, this Court has the authority to proceed after permitting Evans to withdraw the unexhausted claim,[20] or to stay the proceedings to permit Evans to properly exhaust his claim.[21]

**4.    Given Evans' vigorous efforts to litigate his ineffective assistance of counsel claim, and given the state court's refusal to provide him a full and fair hearing on this issue, this Court should grant Evans an**

---

[19]Mass. R. A. P. 16(f).

[20]*Rose v. Lundy,* 455 U.S. 509, 515-518 (1982).

[21]*Delaney v. Matesanz,* 264 F.3d 7, 13-14, & n.5 (1st Cir.2001) (recommending that district court stay, not dismiss, mixed habeas petitions whenever there is a "realistic danger that a second petition, filed after exhaustion has occurred, will be untimely"); *Nowazcyk v. Warden,* 299 F.3d 69, 79 (1st Cir. 2002) (growing consensus that a stay may be required when dismissal of a mixed petition might jeopardize federal review). *See also Pliler v. Ford,* 124 S. Ct. 2441 (2004).

**evidentiary proceeding.**

The Commonwealth, after enumerating Evans' diligent, though unsuccessful, efforts in the state courts to secure funds for forensic experts and testing to support his ineffective assistance claim, concedes that Evans "cannot be said to have failed to develop the claim" under §2254(e)(2) (CMO 29).   The Commonwealth, however, contends that Evans is nonetheless not entitled to an evidentiary hearing under *Keeney v. Tamayo-Reyes*[22] and pre-AEDPA law (CMO 28-30).

In making its argument, the Commonwealth avers that "[t]he Commonwealth conceded at trial that the blood on Tinsley's coat was consistent with that of both the victim and Tinsley," that "the Commonwealth's fingerprint expert testified that there was insufficient fingerprint detail on either gun to make an identification," that "the Commonwealth's experts produced no conclusive evidence linking the petitioner to the crime," and that, as the state court concluded, "there was no reason for counsel to believe that any testing would benefit the defense or that any hoped for results would likely have influenced the jury" (CMO 30-31).

The Commonwealth's argument is fundamentally flawed since "the true

_____

[22]504 U.S. 1 (1992).

strength of the prosecution's proof cannot be assessed without considering [the

defendant's] challenges to the reliability of the prosecution's evidence."[23]  In

*Holmes v. South Carolina*, the state presented a "strong" if not overwhelming

evidence of the defendant's guilt that included  palm-print, blood, fiber, and DNA

evidence implicating the defendant as the perpetrator.   The defendant there

claimed that the authorities had "framed" him, but when he tried to introduce

evidence pointing to a third party as the true culprit, the trial court precluded him

on the g round that state evidentiary rules prevented the admission of  third party

culprit evidence that is speculative and fails to raise a "reasonable inference"as to

the defendant's actual innocence.  In reversing the defendant's conviction, the

Supreme Court (per Alito, J.) held that even though the prosecution had presented

overwhelming forensic evidence of the defendant's guilt, the defendant was

constitutionally entitled to present a "complete defense," including all probative

evidence undermining the strength of the state's forensic evidence and pointing the

finger at a third party.  The Court explained that "no logical conclusion can be

reached regarding the strength of contrary evidence offered by the other side [i.e.,

the defense] to rebut or cast doubt" simply "by evaluating the strength of only one

---

[23]*Holmes v. South Carolina,* 126 S. Ct 1727, 1734 (2006) (Alito, J.).

party's [i.e., the prosecution's] evidence."[24]

Here, the Commonwealth's assertion that ***prosecution*** experts "produced no conclusive evidence linking [Evans] to the crime" and that Evans thus "failed to show that the proposed experts' tests would have been significantly exculpatory," bespeaks the same logical fallacy condemned by the Supreme Court in *Holmes* — it evaluates the strength of the potential defense evidence solely in the context of the prosecution's own evidence alone and assumes that the prosecution's evidence was unassailable and would not have been undermined by an independent forensic examination by the defense. Moreover, even if the prosecution had conceded that the blood on Tinsley's coat was consistent with that of both the victim and Tinsley, this is a far cry from definitive evidence proving that the blood on Tinsley's coat was, in fact, the victims and that the location and patterns of blood spatter and gunshot residue proved that Tinsley fired the shots from the black H&K that killed the victim. For these and other reasons discussed in greater detail in Evans' original memorandum, expert evidence for the defense would have undermined the credibility of the Commonwealth's percipient and forensic witnesses and would have corroborated Evans' assertions that his gun was pointed down and away from the victim and that he had absolutely nothing to do with the victim's shooting.

---

[24]*Id.*

**5.      Conclusion.**

For all of the reasons advanced above, in Evans' original memorandum, and in his motion for funds and for an evidentiary hearing that is being filed herewith, this Court should either issue the writ, or if further development of the facts is deemed necessary, grant Evan's motion for funds and conduct an evidentiary hearing on the ineffective assistance of counsel issue.

Respectfully submitted,
Jimmy Evans,
By his attorney:

/s/Michael R. Schneider
Michael R. Schneider
MA BBO # 446475

SALSBERG & SCHNEIDER
95 Commercial Wharf
Boston, MA 02110
(617) 227-7788
*Counsel for Petitioner*

**Certificate of Service**

I hereby certify that this motion has been served on counsel for the Commonwealth of Massachusetts AAG Suzanne Reardon by e-filing.

/s/Michael R. Schneider
Michael R. Schneider

Dated:   September 5, 2006