# United States District Court
# District of Massachusetts

|  |  |  |
|---|---|---|
| Jimmy Evans,<br>            Petitioner,<br><br>v.<br><br>Michael Thompson,<br>     Superintendent, MCI Shirley<br>                    Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 04-12205-WGY |

## Motion for Certificate of Appealability

The petitioner Jimmy Evans hereby moves for a certificate of appealability, under 28 U.S.C. § 2253 (c)(1)(A), Fed. R. App. P. 22 (b)(1), and Loc. R. 22.1 (a), as to the following grounds: (1) the unconstitutionality of the extreme deference to state court determinations of federal law required by 28 U.S.C. 2254(d), as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996, Memorandum & Order (hereinafter "Mem.") at 9-23; (2) trial counsel's ineffective assistance for failure to conduct an independent forensic investigation, *see* Mem. at 26-30, 38-44; and (3) this Court's denial of his motion for funds and an evidentiary hearing to develop the factual basis for his ineffective assistance of counsel claim,

*see* Mem. at 44-49.

As grounds therefor, Evans states as follows:

## A. Introduction.

1. On December 11, 2006, this Court issued a Memorandum and Order, finding all claims raised in Evans' §2254 petition to have been properly exhausted but denying all requested relief. *See* Mem. at 23-26, 49.

2. On December 15, 2006, Evans filed a timely notice of appeal.

## B. The standard for certificate of appealability.

3. In determining whether to issue a certificate of appealability ("COA") under 28 U.S.C. §2253(c), courts are to apply the lenient standards mandated by the United States Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) and *Miller-El v. Cockrell,* 123 S. Ct. 1029, 1039-1040 (2003). Under that standard, a COA is to issue whenever it can be said that "reasonable jurists could debate" whether "the [petition] should have been resolved in a different manner" and that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484, *quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983). If the issue is debatable, the COA should issue "even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail." *See Miller-El,* 123 S. Ct. at

1040.

## C. The constitutionality of AEDPA's deference provision has never been squarely decided, is currently being litigated in the Ninth Circuit, and is thus subject to reasoned debate.

4. Evans' direct challenge to the constitutionality of AEDPA's deference provision, §2254(d), is at least "debatable," "even though every jurist of reason might agree, after the COA has been granted and the case received full consideration, that the petitioner will not prevail." *See Miller-El,* 123 S. Ct. at 1040. This is true for at least four reasons.

5. First, the Supreme Court has never addressed this issue directly. While a similar constitutional challenge to the deference provision of AEDPA was presented by the petitioners in their certiorari petition in *Williams v. Taylor,*[1] the Supreme Court denied certiorari on the issue.[2]

6. Second, a very similar set of issues is currently being litigated in the Ninth Circuit in the case of *Irons v. Carey.*[3] Although no decision has yet been issued, the Ninth Circuit found the issue sufficiently debatable that it ordered

---

[1] *See* Petition for Writ of Certiorari, *Williams v. Taylor,* 529 U.S. 363 (2000) (No. 98-8384).

[2] *See Williams v. Taylor,* 526 U.S. 1050 (1999) (mem.).

[3] Ninth Circuit Docket No. 05-15275.

further briefing by the parties on the *Marbury v. Madison* issue, permitted the filing of an amicus brief on the issue, and granted the petitioner oral argument.

7. Third, this Court's ruling denying Evans' claims is premised on the highly "debatable" assumptions that the Suspension Clause, the Due Process Clause, and Article III, place no meaningful restrictions on the constitutional capacity of Congress and the Supreme Court to so "narrow[ ] the protections of the Writ" and to "strip[ ] the courts of their jurisdiction to entertain habeas issues" to the point that "the Great Writ is great no longer." Mem. at 21. It is far from clear, however, that Congress has the constitutional authority to drain the Great Writ of its remedial vitality without, at some point, violating the Suspension and Due Process Clauses.[4]

---

[4] *See* Evans Reply Mem. at 5 & n.6, *citing Enwonwu v. Chertoff,* 376 F. Supp. 2d 42, 78-85 (D. Mass. 2005), *aff'd in part and rev'd in part on other grounds,* 438 F.3d 22 (1st Cir. 2006) (observing that while Congress has the power to strip the district courts of jurisdiction to review alien removal orders, the writ of habeas corpus is "constitutionally protected" under Article I, §9, cl. 2, and "courts must be cognizant that interpreting [statutes such as the REAL ID Act] to pinch too tightly on access to the writ may create significant constitutional concerns"); *Hamdan v. Rumsfeld,* 126 S. Ct. 1749, 2764 (2006) (declining to reach issue of whether congressional enactment of provisions stripping the federal courts of jurisdiction over Guantanamo inmates infringed on the jurisdiction of Article III courts); Jordan Steiker, "Incorporating the Suspension Clause: Is There a Constitutional Right to Federal Habeas Corpus for State Prisoners?," 92 Mich. L. Rev. 862 (1994) (arguing that Fourteenth Amendment due process has incorporated the right of state prisoners to invoke habeas corpus to

8. Fourth, this Court's ruling is also premised on the equally debatable conclusion that because our "dual system of government" gives state courts "the first opportunity to correct constitutional errors made in their proceedings," Mem. at 22 (citation omitted), and permits *some* deference to state court rulings on federal law issues, Congress may take the further leap of requiring Article III judges in "'close cases' to close their eyes" to federal constitutional errors by "deferring to faulty state court rulings on federal constitutional questions" in violation of Article III and the Supremacy Clause.[5]

---

challenge their state convictions).

[5]*See* Evans Reply Mem. at 3 & n.4., *quoting* Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice & Procedure* (4th ed.2001) & Suppl. (2006), §32.4, pp. 1462-1497; and *citing id.* (reaching this conclusion after making a close evaluation of the historical evidence concerning the framing of the constitution and after examining two centuries of case law interpreting Article III and the Supremacy Clause); Evans Reply Mem. at 29, *citing Marbury v. Madison*, 5 U.S. 137, 177 (1803) (declaring that "[i]t is emphatically the province and duty of the judicial department to say what the law is," and that "[t]hose who apply the rule to particular cases, must of necessity expound and interpret that rule"); *Martin v. Hunter's Lessee*, 14 U.S. 304, 348 (1816) (warning of the "public mischiefs" that would ensue if "[j]udges of equal learning and integrity, in different states, might differently interpret a statute" if "there were no revising authority to control these jarring and discordant judgments"); *Wright v. West*, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring) ("federal courts, even on habeas, have an independent obligation to say what the law is"); *United States v. Nixon,* 418 U.S. 683, 704-05 (1974) ; *Chapman v. California*, 386 U.S. 18 (1967) (Black, J.) (recognizing that determining the circumstances under which state court rules limiting remedies for federal constitutional violations was a

**D.    Evans' claim that trial counsel's failure to conduct an *independent* investigation violated *Strickland* is highly debatable and is worthy of further consideration by the First Circuit.**

9.  This Court's sweepingly rejection of Evans' claim that trial counsel's failure to conduct an *independent* forensic investigation violated *Strickland v. Washington*[6] rests on a number of highly debatable premises.

10.  This Court erroneously suggests that Evans claimed that counsel "completely fail[ed] to investigate the evidence" and concludes that this claim is "not true" because Evans' trial counsel had access to the findings of his brother's investigator. *See* Mem. at 38-39. This Court's reasoning is debatable for a number of reasons.

11.  First, the Court's opinion mis-frames the issue by setting up a straw man of its own creation. Evans never claimed that counsel "completely failed to investigate the evidence," Mem. at 37, only that counsel "completely failed" to "retain an investigator," "to conduct an *independent* investigation," and to consult with even a single forensic expert. Pet. Mem. in Support of Pet. For Writ of Habeas Corpus, 1, 31, 34, 41, (emphasis added to the word "independent"; other

---

federal question and that the federal courts were not permitted to defer to state court rulings on this issue).

[6] 466 U.S. 668, 690-691 (1984).

emphasis deleted) .

12.  Second, while this Court correctly observes that "Evans' brother John had his lawyer hire an investigator to examine the evidence, and Evans' lawyer had access to all of these findings," Mem. at 39, Evans' alleged role in the incident was quite different from his brother's.  While the investigation of John's defense would have focused on finding witnesses to support his claim that he was down the block from Walaikum's at the time of the shooting and that he never handled or fired the black H&K pistol, a proper independent investigation of Evans' defense would have focused on an examination of the crime scene to support Evans' testimony that the shots discharged from the silver Ruger were aimed away from the victim and were consistent with an accidental discharge and to support Evans' position that Tinsley was the apparent shooter.  This Court's tacit conclusion that counsel's passive receipt of the "findings" of John's investigator was sufficient to meet *Strickland*'s performance prong is highly debatable and should be addressed by the First Circuit.

13.  This Court further concludes that trial counsel's failure to hire or even consult with even a single forensic expert, or to request forensic testing, was based on trial counsel's "reasonable belief" that forensic testing "would not have furthered the defense in any significant way," and faults Evans for his claim that

the case "hinged . . . critically on forensic evidence." Mem. at 39-42. Moreover, the Court dismisses Evans' claims as speculative and ends up adopting the Massachusetts Supreme Judicial Court's highly questionable conclusion that new "forensic evidence pointing to Tinsley as a shooter would not have led to a different result since Evans admitted to being at the entrance to Walaikum's when his gun went off." Mem. at 44. This Court's analysis is certainly debatable, if not faulty, for at least three reasons.

14. First, the fact that the *Commonwealth's* case did not rest heavily on forensic evidence does not, as this Court suggests, mean that the *defense* case would not have greatly benefitted from an independent forensic investigation showing that Tinsley was the likely shooter, that the silver Ruger held by Evans was capable of accidentally discharging, that it was pointed downward and away from Jackson when it discharged, and that Evans likely did not intend to fire any shots at Jackson or anyone else.

15. Second, this Court's conclusion that forensic testing of Tinsley's jacket would not have benefitted Evans because the Commonwealth had already conceded at trial that the victim's blood might have been on Tinsley's jacket, *see* Mem. at 39, rests on the debatable assumption that the location and pattern of blood spatter and gunshot residue on Tinsley's *sleeves* (whether on the front or

back of the sleeves) could not have been developed by blood and ballistics experts to show that Tinsley was a likely shooter.[7]

16. Third, this Court's assertion that forensic evidence pointing to Tinsley as a shooter would not have undermined the Commonwealth's case because the Commonwealth had presented evidence that there were two shooters and because Evans admitted having been at the entrance to Walaikum's when his gun discharged, *see* Mem. at 44, ignores the fact that the Commonwealth's case rested heavily on the credibility of its percipient witnesses who insisted that the Evans brothers, and not the others, were the shooters. Presumably, the jury acquitted Tinsley and Brown based on the testimony of these witnesses. While this Court acknowledges that the SJC's factual conclusion that Tinsley was a joint venturer "may have been an unreasonable application of *Strickland* in light of the jury acquittal,"*see* Mem. at 29-30, it fails to recognize that its conclusions equally depend on the same legally untenable premise that Tinsley may have been a joint venturer.

17. Fourth, while this Court characterizes Evans' assertions about the

---

[7]While this Court accepts the Commonwealth's contention that "most of the blood was on the back of Tinsley's coat," Mem. at 39, the Court failed to note that blood was specifically found on the "*sleeves*" of Tinsley's coat (Tr.6/19-20).

potential value of forensic testing as speculative, *see* Mem. at 39, this stems from the refusal of both the state courts and this Court to grant Evans funds to retain the experts needed to examine the DNA, blood spatter, and ballistics evidence, and to hold an evidentiary hearing where Evans could further develop the factual record.[8] Given Evans' need to further develop the factual record, it is at least debatable whether this Court's refusal to grant Evans funds constituted a failure to exercise discretion under 18 U.S.C. §3006A(e)(1) and whether this Court's refusal to hold an evidentiary hearing constituted an abuse of discretion under 28 U.S.C. §2254(e).

---

[8]*See* Pet. Mot. For Funds & for an Evid. Hearing in Support of his Pet. For Writ of Habeas Corpus (Doc. #12).

# E. Conclusion.

For all of the reasons set forth above and in Evans' prior submissions in support of his petition for habeas corpus relief under 28 U.S.C. §2254, this Court should issue a certificate of appealability and permit Evans — who is currently serving a sentence of life imprisonment without the possibility of parole — to further address these issues before the First Circuit.

<div style="margin-left:40%">
Respectfully submitted,
Jimmy Evans,
By his attorney:

/s/Michael R. Schneider
Michael R. Schneider
Mass. BBO # 446475
Salsberg & Schneider
95 Commercial Wharf
Boston, MA 02110
617-227-7788
</div>

Dated: February 5, 2007

## Certificate of Service

I hereby certify that the above motion has been served on Suzanne Reardon, counsel for the Commonwealth of Massachusetts, by e-filing.

<div style="margin-left:40%">
Michael R. Schneider
Michael R. Schneider
</div>