# United States Court of Appeals
## For the First Circuit

No. 07-1014

JIMMY EVANS,

Petitioner, Appellant,

v.

MICHAEL A. THOMPSON,
Superintendent of MCI Shirley,

Respondent, Appellee,

UNITED STATES OF AMERICA,

Intervenor.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya and Siler*, Senior Circuit Judges.

Michael R. Schneider with whom Salsberg & Schneider were on
brief for appellant.
John M. Thompson and Thompson & Thompson, P.C., on brief for
the Committee for Public Counsel Services, the National Association
of Criminal Defense Lawyers, the Massachusetts Association of
Criminal Defense Lawyers, and the Criminal Justice Institute, amici
curiae.
Susanne G. Reardon, Assistant Attorney General, with whom

---

*      Of the Sixth Circuit, sitting by designation.

Martha Coakley, Attorney General, was on brief for appellee.
    Michael A. Rotker, Attorney, Department of Justice, with whom
Alice S. Fisher, Assistant Attorney General, was on brief for
intervenor.

---

February 8, 2008

---

**LYNCH, Circuit Judge.**  Jimmy Evans seeks federal habeas relief under 28 U.S.C. § 2254, asserting that he received ineffective assistance of counsel during his Massachusetts state trial for murder.  He also challenges the constitutionality of limitations imposed by § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214.  Evans argues that the revised statute violates Article III, the separation of powers, and the Supremacy Clause of the U.S. Constitution because it restricts the capacity of federal judges to reach independent decisions and limits the sources of law on which they may rely; he also argues that AEDPA so narrows the availability of habeas relief for state prisoners as to effectively suspend habeas in violation of the Suspension Clause.

Similar constitutional challenges to the AEDPA amendments have been rejected by majority opinions in the Fourth, Seventh, and Ninth Circuits, at times over spirited dissents.  Crater v. Galaza, 491 F.3d 1119 (9th Cir. 2007), reh'g and reh'g en banc denied, 508 F.3d 1261 (9th Cir. 2007); Green v. French, 143 F.3d 865 (4th Cir. 1998), abrogated in part by Williams v. Taylor, 529 U.S. 362 (2000); Lindh v. Murphy, 96 F.3d 856 (7th Cir. 1996) (en banc), rev'd on other grounds, 521 U.S. 320 (1997).  We also reject Evans's constitutional arguments, and we affirm the district court's denial of his habeas petition.

I.

The facts underlying this case have been described at greater length by the Massachusetts Supreme Judicial Court ("SJC"), Commonwealth v. Evans, 786 N.E.2d 375, 381 (Mass. 2003), and the district court, Evans v. Thompson, 465 F. Supp. 2d 62, 64-65 (D. Mass. 2006), as well as by this court in reviewing a habeas petition brought by Evans's brother and co-defendant, Evans v. Verdini, 466 F.3d 141, 143 (1st Cir. 2006). We briefly summarize the facts as described by the SJC. See 28 U.S.C. § 2254(e)(1) (in federal habeas proceedings, "a determination of a factual issue made by a State court shall be presumed to be correct").

In the early morning of January 25, 1995, Lyle Jackson was shot three times inside a small and crowded fast food restaurant, Walaikum's, in Dorchester, Massachusetts. Petitioner Evans, his brother John, and their friends Robert Brown and Ronald Tinsley had arrived at Walaikum's shortly before the shooting. They had previously been at a nightclub, where John had fired a gun at a group of people in the presence of Jackson and his friend. According to eyewitnesses at Walaikum's, Brown identified Jackson to Evans, who then pulled out a silver handgun with a black handle. Jackson backed away, falling over some tables and chairs and crawling into a corner, where he begged Evans for his life. Evans shot at him multiple times. John, who also had a gun, then fired a shot at Jackson. Evans, John, Brown, and Tinsley fled the scene

-4-

in a gold Lexus automobile. In the police chase that ensued, two guns were thrown out of the car and were later retrieved by the police. The four men were apprehended after they abandoned the car and tried to flee on foot. Evans, 786 N.E.2d at 381.

Shell casings from both guns were recovered at the crime scene, both inside and outside Walaikum's. There was no gun powder residue on Jackson's clothes, suggesting that he had been shot from a distance of at least three feet. Id. A bloody bullet fragment found inside Walaikum's was linked to the silver-and-black handgun. Id. at 390. The police were unable to identify any fingerprints off either gun. Id. at 381.

Jackson died from his wounds. The four men were indicted and tried together on a theory of murder by joint venture. Evans and his brother John were both found guilty, while Brown and Tinsley were acquitted. Id. at 382. Evans moved for a new trial as well as for funds to conduct post-conviction forensic investigations. His motions were denied, and his appeal of that denial was consolidated with his direct appeal to the SJC. The SJC affirmed his conviction and upheld the denial of his post-conviction motions. Id. at 393. The Supreme Court denied his petition for writ of certiorari. Evans v. Massachusetts, 540 U.S. 973 (2003).

Evans then filed a petition for writ of habeas corpus in the District of Massachusetts, challenging the constitutionality of

§ 2254 as amended by AEDPA and asserting, inter alia, that his counsel provided ineffective assistance when he failed to conduct independent forensic investigations. The district court denied his petition. Evans, 465 F. Supp. 2d at 84. After the court granted Evans a certificate of appealability on both issues, he timely appealed.

II.

The statute at issue, 28 U.S.C. § 2254(d)(1), as amended by AEDPA, provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

Petitioner's arguments are based not so much on the statutory text of § 2254(d) as on the Supreme Court's binding interpretation of that text in Williams v. Taylor as to the meaning of three key terms in the statute: "clearly established," "contrary to," and "unreasonable application." As interpreted by the Supreme Court, "clearly established" law refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A state court decision is "contrary to" that clearly

-6-

established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. A state court decision is an "unreasonable application of" Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. It is not enough that a state court decision erroneously apply clearly established law; its application must be not only wrong, but unreasonably so. Id. at 411.

## III.

Evans's constitutional arguments fall into three general categories: (1) that by prohibiting the granting of habeas relief unless a state court decision was not merely wrong but was also an "unreasonable application" of federal law, § 2254(d)(1) violates Article III, the separation of powers, and the Supremacy Clause; (2) that by limiting judges to federal law as "clearly established" by the Supreme Court, § 2254(d)(1) unconstitutionally constrains independent judicial decisionmaking, violating Article III and the separation of powers; and (3) that § 2254(d), as amended, so restricts the granting of federal habeas relief for state prisoners as to effectively suspend habeas in violation of the Suspension Clause. We consider each argument in turn, and begin with some

-7-

fundamental principles about the constitutional structure of our government.

A.

First, the Constitution recognizes that state court judges may interpret the Constitution and binds them to compliance with the Constitution, notwithstanding contrary state law. U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). The U.S. Constitution does not displace state judicial systems, nor does it subject state judicial decisions to direct review by the lower federal courts. Rather, "from the beginning we have had in this country two essentially separate legal systems. Each system proceeds independently of the other with ultimate review in [the Supreme] Court of the federal questions raised in either system." Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 286 (1970) (emphasis added). Under this dual system, "federal and state 'courts [are] equally bound to guard and protect rights secured by the Constitution.'" Rose v. Lundy, 455 U.S. 509, 518 (1982) (alteration in original) (quoting Ex parte Royall, 117 U.S. 241, 251 (1886)). Congress expects such fealty from the state courts, and the Constitution requires it.

Based on this expectation, Congress did not grant federal question jurisdiction to the lower federal courts for roughly the first century of our country's history, instead counting on the state courts to handle such cases when the parties were not diverse. See Judiciary Act of March 3, 1875, 18 Stat. 470 (granting general federal question jurisdiction to lower federal courts). Nor did Congress extend the writ of habeas corpus to all persons in state custody "in violation of the Constitution, or of any treaty or law of the United States" until 1867. Act of Feb. 5, 1867, 14 Stat. 385; see also Felker v. Turpin, 518 U.S. 651, 659 (1996).

The writ of habeas corpus does not empower lower federal courts to conduct direct review on appeal from state criminal convictions: that authority is reserved for the Supreme Court. Cf. D.C. Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Atl. Coast Line R.R. Co., 398 U.S. at 286. Petitioner here has already received a full trial, appeal, and collateral review before a state court bound by the Constitution, and he has exercised his option to seek direct review before the Supreme Court of his state court conviction. The "interests of comity and finality must . . . be considered in determining the proper scope of habeas review." Teague v. Lane, 489 U.S. 288, 308 (1989).

We note a second preliminary principle. While the authority of the federal courts comes from Article III of the

-9-

Constitution, the existence of the lower federal courts, including

this court, and the extent of our jurisdiction depend entirely on

statutory grants from Congress, unlike the Supreme Court. U.S.

Const. art. III, § 1 ("The judicial Power of the United States,

shall be vested in one supreme Court, and in such inferior Courts

as the Congress may from time to time ordain and establish."). The

Supreme Court has often explained that:

> [T]he judicial power of the United States,
> although it has its origin in the Constitution,
> is (except in enumerated instances, applicable
> exclusively to [the Supreme Court]) dependent for
> its distribution and organization, and for the
> modes of its exercise, entirely upon the action
> of Congress, who possess the sole power of
> creating the tribunals (inferior to the Supreme
> Court) for the exercise of judicial power . . .
> and of withholding jurisdiction from them in the
> exact degrees and character which to Congress may
> seem proper for the public good.

Cary v. Curtis, 44 U.S. (3 How.) 236, 245 (1845). More recently,

the Court has reiterated:

> The decision with respect to inferior federal
> courts, as well as the task of defining their
> jurisdiction, was left to the discretion of
> Congress. That body was not constitutionally
> required to create inferior Art. III courts to
> hear and decide cases within the judicial power.
> . . . [n]or, if inferior courts were created, was
> it required to invest them with all the
> jurisdiction it was authorized to bestow under
> Art. III.

Palmore v. United States, 411 U.S. 389, 400-01 (1973). Adherence

to this principle has been constant. See, e.g., Kline v. Burke

Constr. Co., 260 U.S. 226, 234 (1922) ("Only the jurisdiction of

-10-

the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress."); Sheldon v. Sill, 49 U.S. (8 How.) 441, 448-49 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions. . . . Courts created by statute can have no jurisdiction but such as the statute confers."). As such, Congress has great leeway to expand or restrict the jurisdiction of the lower federal courts.

B.

We take up first Evans's challenge to § 2254(d)(1)'s restriction of federal habeas relief to instances where state courts have "unreasonably" applied Supreme Court precedent. As a practical matter, this challenge refers to a very small category of decisions. It does not include cases in which the state court failed to address the petitioner's constitutional claim; in those cases, the federal courts consider the claim de novo. Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001). Nor does it include cases where the state courts were obviously wrong or obviously right in applying Supreme Court precedent. The question only arises where a federal court, in its independent review, finds the state court's application of Supreme Court precedent to be erroneous but not to be unreasonable. McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002) (en banc).

Despite petitioner's depiction to the contrary, the gap between erroneous state court decisions and unreasonable ones is narrow. At least four Justices agree that it will be the rare case that will fall into this gap. See Williams, 529 U.S. at 388 (opinion of Stevens, J.). As the statutory language is applied in this circuit, the "increment [for an erroneous decision to be unreasonable] need not necessarily be great." McCambridge, 303 F.3d at 36; see also Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (same). It is not necessary, for example, for a state court decision to be "so far off the mark as to suggest judicial incompetence" before relief can be granted. Francis S., 221 F.3d at 111 (quoting Matteo v. Superintendent, 171 F.3d 877, 889 (3d Cir. 1999)) (internal quotation marks omitted). Rather, a case will fall into this narrow gap precluding relief only when "it is a close question whether the state decision is in error." McCambridge, 303 F.3d at 36 (emphasis added); see also Jackson v. Coalter, 337 F.3d 74, 84 (1st Cir. 2003). There is no need for there to be a Supreme Court case on all fours for a state decision to be unreasonable. White v. Coplan, 399 F.3d 18, 25 (1st Cir. 2005). "It is enough if the Supreme Court's general principles can be discerned and if, respectfully but with confidence," the federal court concludes that the state court unreasonably applied federal law. Id.; see also Ouber v. Guarino, 293 F.3d 19, 31-32, 34-35

(1st Cir. 2002) (affirming grant of habeas relief where state court decision was an unreasonable application of federal law).[1]

Still, there will be cases which are in that gap where relief will be denied. This is where the state court decision about a criminal defendant is in constitutional error and (a) the Supreme Court has not corrected the error on direct review and (b) the lower federal courts are precluded from granting relief because any error was not an unreasonable one. First, it is worth emphasizing that even though a state court may have made a constitutional error, that does not mean the defendant is actually innocent of the crime of conviction. The usual remedy on successful habeas petitions is a new trial in the state court, if the state wishes to continue to prosecute. See, e.g., Foxworth v. Maloney, ___ F.3d ___, 2008 WL 192288, at *1 (1st Cir. Jan. 24, 2008); Dugas v. Coplan, 428 F.3d 317, 342 n.37 (1st Cir. 2005); Henderson v. Frank, 155 F.3d 159, 168 (3d Cir. 1998); Bowen v. Maynard, 799 F.2d 593, 614 n.12 (10th Cir. 1986). Sometimes double jeopardy principles mean the habeas petitioner is simply released, as is done when the evidence of guilt is insufficient. Foxworth,

---

[1]     The en banc court in McCambridge, overruling prior circuit precedent, rejected a more stringent rule that "for the writ to issue, the state court decision must be so offensive to existing precedent, so devoid of record support, or so arbitrary as to indicate that it is outside the universe of plausible, credible outcomes." McCambridge, 303 F.3d at 37 (quoting Williams v. Matesanz, 230 F.3d 421, 424 (1st Cir. 2000), and O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998) (internal quotation marks omitted)).

-13-

2008 WL 192288, at *1; Fagan v. Washington, 942 F.2d 1155, 1157 (7th Cir. 1991); cf. Burks v. United States, 437 U.S. 1, 18 (1978) (double jeopardy attaches when conviction overturned on direct review due to insufficient evidence). But see Lockhart v. Nelson, 488 U.S. 33, 39-42 (1988) (recognizing that Burks is a narrow exception to the general rule that the government can retry a defendant who succeeds in getting his first conviction set aside).

Second, the cases that fall into this gap are cases involving "close questions," McCambridge, 303 F.3d at 36, where the issue "is painted in shades of grey, rather than in contrasting colors" of right or wrong, Lindh, 96 F.3d at 871. It does not violate the Constitution for the lower federal courts to lack power to grant relief from state court decisions involving such questions.[2]

Only the Supreme Court can finally answer those questions. "The judgment of the court of last resort is 'correct' by definition . . . ." K.S. Scheidegger, Habeas Corpus,

---

[2]    In civil cases, even decisions by state courts which, in the view of the lower federal court, are improper may not provide the basis for federal court relief. See 28 U.S.C. § 1738 (state court decisions receive full faith and credit in federal courts); Atl. Coast Line R.R. Co., 398 U.S. at 296 ("Nor was an injunction necessary because the state court may have taken action which the federal court was certain was improper under [Supreme Court precedent]. Again, lower federal courts possess no power whatever to sit in direct review of state court decisions. If the union was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the [state] appellate courts and ultimately, if necessary, in this Court.").

Relitigation, and the Legislative Power, 98 Colum. L. Rev. 888, 953 (1998) (citing Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in the result)). State courts are not bound by the dictates of the lower federal courts, although they are free to rely on the opinions of such courts when adjudicating federal claims. See Lockhart v. Fretwell, 506 U.S. 364, 376 (1993) (Thomas, J., concurring) ("The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation."). Therefore, a lower federal court's application of Supreme Court precedent is not inherently any more "right" or "correct" than that of state courts.[3] See, e.g., Caspari v. Bohlen, 510 U.S. 383, 394-95 (1994) (considering both federal appellate and state court resolutions of a constitutional question). The Constitution is not offended when lower federal courts are prevented from substituting for that of a state court their judgment as to reasonable application of Supreme Court precedent.[4]

_____

[3] For this reason, petitioner's Supremacy Clause argument is without merit. It is the Supreme Court, and the Supreme Court alone, that has the "revising authority" to "control [the state courts'] jarring and discordant judgments, and harmonize them into uniformity." Martin v. Hunter's Lessee, 14 U.S. (1 Wheat.) 304, 348 (1816).

[4] This analysis would not apply in regard to the application of § 2254(d)(1) to habeas review by the Supreme Court,

Evans argues that federal courts, having once been empowered under previous statutes allowing collateral relief to review such questions without the "reasonableness" limitation, may not constitutionally be forbidden from granting relief when they disagree with the state court's resolution of a legal issue. As Evans acknowledges, Congress can shape the contours of federal jurisdiction to except from that jurisdiction very specific types of claims. See, e.g., Lauf v. E.G. Shinner & Co., 303 U.S. 323 (1938) (upholding the constitutionality of the Norris-LaGuardia Act, which prohibited federal courts from enjoining most union activities arising out of labor disputes). He nonetheless argues that once Congress vests the federal courts with jurisdiction to hear a class of cases, it must not limit the discretion of judges to resolve those cases however they see fit. This is not so, at least not as Evans conceives of this proposition. See Lindh, 96 F.3d at 871-72 (refuting similar claim).

Congress cannot tell the courts what constitutional rights to recognize, for example. See, e.g., City of Boerne v. Flores, 521 U.S. 507 (1997). Congress can, however, set procedural rules and, at least in some instances, restrict the scope of

---

but that is not the question before us. We are concerned only with the constitutionality of the statute as it applies to circuit and district courts.

remedies for those rights without offending the Constitution.[5]  No
one questions the constitutionality of Congress's oversight of the
Federal Rules of Civil and Criminal Procedure, yet "[u]ndoubtedly
most alterations of the rules of practice and procedure may and
often do affect the rights of litigants." Crater, 491 F.3d at 1127
(quoting Hanna v. Plumer, 380 U.S. 460, 464-65 (1965)) (internal
quotation marks omitted).  The running of a statute of limitations
does not cause a right to disappear, but rather constrains a court
from granting relief to remedy the wrong.  Congress has also
limited the ability of the federal courts to intervene in specific
contexts when litigants claim that state legislatures, agencies, or
courts have violated their constitutional rights.  See 28 U.S.C.
§ 1341 (federal district court may not enjoin state tax if state
provides "plain, speedy and efficient remedy"); id. § 1342 (federal
district court may not enjoin state public utility rate-setting
when complaint is based on constitutional claim and other
requirements are met); id. § 2283 (federal court may not enjoin
state court proceedings, with narrow exceptions).

Many limitations on the ability of federal courts to
grant relief originate not from Congress, but from binding Supreme
Court precedent.  This has been true as to the scope of habeas

_____

[5]     Indeed, the line between congressional restrictions of
jurisdiction and congressional restrictions of remedies is often
blurred, as illustrated by cases like Lauf and United States v.
Klein, 80 U.S. (13 Wall.) 128 (1871), which is discussed below.

petitions for state prisoners. The Supreme Court has barred on collateral review the retroactive application of new constitutional rules. Teague, 489 U.S. at 310 (plurality opinion). Thus even before AEDPA, federal courts were not able to grant habeas relief to state prisoners, even if they raised valid constitutional claims, if their claims were based on constitutional rights not clearly established when their state convictions became final.

In fact, the Court before AEDPA had restricted the ability of state prisoners to obtain habeas relief in numerous ways, regardless of the merits of their constitutional claims. See, e.g., Brecht v. Abrahamson, 507 U.S. 619, 627 (1993) (establishing that the harmless error standard is more demanding on collateral review than on direct review of state criminal convictions); McCleskey v. Zant, 499 U.S. 467, 494-95 (1991) (restricting petitioners' ability to bring successive habeas petitions); Wainwright v. Sykes, 433 U.S. 72, 87 (1977) (limiting habeas review of issues not properly preserved in state court proceedings to those for which the petitioner could demonstrate "cause" and "prejudice"); Stone v. Powell, 428 U.S. 465, 481-82 (1976) (barring all habeas review of Fourth Amendment claims when those claims were fully and fairly litigated in state courts). See generally J.H. Blume, AEDPA: The "Hype" and the "Bite", 91 Cornell L. Rev. 259, 280-81 (2006) (noting that cases like these had

-18-

already greatly restricted the availability of habeas relief before AEDPA).

This is also true in other areas of law. Take, for instance, the doctrine of qualified immunity, which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A federal court can thus determine that a plaintiff's constitutional rights have been violated yet deny that plaintiff damages because the right was not clearly established at the time of the violation. See, e.g., Anderson v. Creighton, 483 U.S. 635, 638-39 (1987).

There is thus nothing inherently unconstitutional about Congress restricting the scope of relief available from lower federal courts on collateral review of state criminal convictions. There is no impairment of lower federal courts' independent interpretative authority: such courts still have authority to decide whether a state court decision is wrong, and whether the decision is, in addition, unreasonably so. See Lindh, 96 F.3d at 872. Section 2254(d) only limits the ability of the lower federal courts to grant relief when they conclude, in exercising independent judgment, that even in case of error a state court did not unreasonably apply Supreme Court precedent. Accord Green, 143 F.3d at 875 ("Under the AEDPA, we are free, if we choose, to decide

whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances."); Lindh, 96 F.3d at 872 ("Regulating relief is a far cry from limiting the interpretive power of the courts, . . . and Congress has ample power to adjust the circumstances under which the remedy of the writ of habeas corpus is deployed.").

C.

Evans brings a closely related argument that by restricting habeas relief to situations controlled by "clearly established Federal law" as established by the Supreme Court, § 2254(d)(1) unconstitutionally limits the legal sources on which federal courts can rely in determining what the law is.

Again, Evans exaggerates the effect of § 2254(d)(1), at least in this circuit. Federal courts are not precluded from considering lower federal court decisions, and, indeed, often do consider them. See, e.g., Aspen v. Bissonnette, 480 F.3d 571, 574 (1st Cir. 2007); White, 399 F.3d at 25-26; McCambridge, 303 F.3d at 43; Rashad v. Walsh, 300 F.3d 27, 36, 39-42 (1st Cir. 2002); Ouber, 293 F.3d at 27, 30. It is true that "[w]hether a particular state court decision warrants [relief under § 2254] must be decided primarily on the basis of Supreme Court holdings that were clearly established at the time of the state court proceedings." Rashad, 300 F.3d at 35. "This does not mean, however, that other federal

-20-

court decisions are wholly irrelevant to the reasonableness determination." Ouber, 293 F.3d at 26. For example, "[d]ecisions from the lower federal courts may help inform the AEDPA analysis to the extent that they state the clearly established federal law determined by the Supreme Court." Aspen, 480 F.3d at 574 n.1. Further, "factually similar cases from the lower federal courts" can "provid[e] a valuable reference point" when considering the reasonableness of a state court's application of Supreme Court precedent to a particular set of facts. Rashad, 300 F.3d at 35; see also Ouber, 293 F.3d at 26 ("[I]t is helpful to examine precedents from lower federal courts to determine how the general standard applies to a particular set of facts."). In fact, § 2254(d)(1) does not in any way limit a judge's ability to draw from any legal source in determining whether the state court's decision rests on constitutional error or is an unreasonable application of Supreme Court precedent. It only limits the grounds on which habeas relief may be granted.

Petitioner argues that Congress has attempted to interfere with the basic decisionmaking functions of the federal courts by prescribing a rule of decision. Petitioner misapplies, however, the Supreme Court's holding in United States v. Klein, 80 U.S. (13 Wall.) 128 (1871). Following the Civil War, claimants of property seized by the government were allowed to bring suit in the Court of Claims to recover that property provided they could

-21-

establish proof of loyalty. After the Supreme Court held that a presidential pardon constituted sufficient proof of loyalty, Congress passed a statute declaring that presidential pardons could not be admitted as proof of loyalty and, furthermore, any case based on such a pardon must be dismissed by the courts for lack of "jurisdiction." In Klein, the Court declared the law unconstitutional on two grounds: because it interfered with the President's pardon power and thus encroached on Article II, id. at 147-48, and because Congress had "prescribed" a "rule of decision," thereby encroaching on Article III, id. at 145-47. While the Court "acknowledged [the] power of Congress to make exceptions and prescribe regulations to the [Court's] appellate power," this was not in fact an exercise of that power. Id. at 146. Rather, the Court reasoned, the invocation of "jurisdiction" was a linguistic legerdemain to hide the fact that Congress was instructing the Court to decide these cases a certain way, namely, to dismiss such cases for want of jurisdiction "because and only because [the Court's] decision, in accordance with the settled law, must be adverse to the government and favorable to the suitor." Id. at 146-47; see also R. Fallon et al., Hart and Wechsler's The Federal Courts and the Federal System 339 (5th ed. 2003).

There is a world of difference between telling a court how to decide a case given a certain set of facts and limiting the availability of relief after a judge independently determines the

existence of a right and the reach of Supreme Court precedent. Accord Crater, 491 F.3d at 1127 ("Section 2254(d)(1) does not instruct courts to discern or to deny a constitutional violation. Instead, it simply sets additional standards for granting relief in cases where a petitioner has already received an adjudication of his federal claims by another court of competent jurisdiction."); Green, 143 F.3d at 875; Lindh, 96 F.3d at 872.   As Judge Easterbrook colorfully described in Lindh:

> Congress cannot tell courts how to decide a particular case, but it may make rules that affect classes of cases. Congress cannot say that a court must award Jones $35,000 for being run over by a postal truck, but it may prescribe maximum damages for categories of cases or provide that victims of torts by federal employees cannot receive punitive damages.

96 F.3d at 872 (citations omitted).

Petitioner's reliance on Plaut v. Spendthrift Farm, Inc., 514 U.S. 211 (1995), is also misplaced.  Plaut stands for the unremarkable proposition that Congress cannot, by legislative fiat, overturn a final judgment of a federal court.  Id. at 218.   If anything, AEDPA furthers the principle of finality by limiting the grounds on which courts collaterally reviewing final judgments may disturb them.

In the end, while AEDPA does restrict a remedy, it does not interfere with Article III powers, nor does it prescribe a rule of decision.

D.

Finally, Evans argues that the AEDPA amendments restrict
the availability of habeas relief to such an extent as to
constitute an implied suspension of the writ. See U.S. Const. art.
I, § 9, cl. 2 ("The privilege of the Writ of Habeas Corpus shall
not be suspended, unless when in Cases of Rebellion or Invasion the
public Safety may require it."). This argument also fails.

This case concerns only restrictions on the ability of
federal courts to issue habeas relief to prisoners in custody for
state convictions. As we have said, state courts are bound to
honor constitutional rights, and direct review is available in the
Supreme Court. See Scheidegger, supra, at 892 ("[T]here is no
question of a congressional cutoff of all remedies."). Nothing in
this opinion concerns claims of suspension of habeas relief in
other situations.

Limitations on the availability of federal habeas relief
for state court convictions are nothing new. Before AEDPA, the
scope of the writ was already subject to "a complex and evolving
body of equitable principles informed and controlled by historical
usage, statutory developments, and judicial decisions." Felker,
518 U.S. at 664 (quoting McCleskey, 499 U.S. at 489) (internal
quotation mark omitted). Just as Congress can expand the
availability of habeas relief,[6] so can it add some restrictions to

---

[6]     We do not reach the question of the constitutionally
required scope of the writ and assume here, as the Court did in
Felker, that "the Suspension Clause of the Constitution refers to

-24-

the issuance of the writ without effectuating its suspension. See, e.g., id. at 664 (upholding the constitutionality of AEDPA's restriction on multiple habeas petitions); Delaney v. Matesanz, 264 F.3d 7, 12 (1st Cir. 2001). As we have explained, the scope of these restrictions is not so wide-reaching as Evans argues. AEDPA falls on the permissible restriction side of the Suspension Clause line. Accord Crater, 491 F.3d at 1125-26; Green, 143 F.3d at 875; Lindh, 96 F.3d at 867-68. For these reasons, we reject all of petitioner's constitutional challenges to AEDPA, and decline to engage in de novo review of his claims, as he requests.

V.

Petitioner has essentially, but not explicitly, conceded that his habeas petition cannot succeed if the state court decision is viewed through the lens of AEDPA.[7] He is correct.

The SJC reasonably concluded that the outcome of any additional forensic testing would not have aided Evans's defense. Counsel would have had no reason to believe the testing would

_____

the writ as it exists today, rather than as it existed in 1789." Felker, 518 U.S. at 663-64.

[7] The SJC analyzed Evans's ineffective assistance of counsel claim under Massachusetts law. "For habeas purposes, where state law is explicitly more favorable to defendants than the federal standard, 'we will presume the federal law adjudication to be subsumed within the state law adjudication.'" Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting McCambridge, 303 F.3d at 35). The SJC has held that its standard is at least as favorable as that of Strickland v. Washington, 466 U.S. 668 (1984). Commonwealth v. Wright, 584 N.E.2d 621, 624 (Mass. 1992); see also Ouber, 293 F.3d at 32.

result in additional evidence -- that another fingerprint expert, for example, could identify fingerprints on the guns when the Commonwealth's expert could not. Evans, 786 N.E.2d at 391.  Nor would the additional evidence that Evans seeks have helped undermine the prosecution's case -- even if the blood on Tinsley's coat were the victim's, to take another example, the prosecutor admitted that possibility at trial and relied instead on the close proximity of the defendants that the small space of the murder scene would have demanded. Id. at 390.  There is no need to repeat further here the full and more-than-reasonable explanation provided by the SJC. See id. at 390-91.

## VI.

Because we have rejected petitioner's challenge to the constitutionality of AEDPA, and because the SJC's denial of Evans's post-conviction motions was based on a reasonable application of the Strickland standard, we affirm.